[No. B102106. Second Dist., Div. Three. Jan. 30, 1998.]

ROSARIO E. SOBREMONTE et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BANK OF AMERICA NATIONAL TRUST AND SAVINGS
ASSOCIATION, Real Party in Interest.

COUNSEL

Paul F. Sowa for Petitioners.

Gail K. Hillebrand, Earl Lui, James C. Sturdevant, Carolyn Enciso, Richard Alexander, Ann Saponara, Day & Day and Marjorie W. Day as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

F. Thomas Eck IV, Jan Harris Aniel, Ullar Vitsut, John F. Cooney, Arne D. Wagner, Michael J. Halloran, Morrison & Foerster, Shirley M. Hufstedler, Seth M. Hufstedler, Kathleen V. Fisher, Maria Chedid and Tracie L. Brown for Real Party in Interest.

Christopher E. Chenoweth, Steven I. Zeisel, John J. Gill, Michael F. Crotty, Paul A. Allen, Fred L. Main and Paul Grossman as Amici Curiae on behalf of Real Party in Interest.

OPINION

KITCHING, J.—Rosario Sobremonte (Sobremonte) and her mother Amparo Esperidion (Esperidion) seek mandamus relief from an order granting Bank of America's (Bank) petition to compel arbitration of a dispute arising from an alleged improper setoff against their accounts.[1]

Sobremonte and Esperidion have made two arguments. First, they contend the arbitration provision was invalid and unenforceable because of lack of sufficient notice and mutual assent of the parties. Second, they assert the Bank waived its right to compel arbitration because it both failed to timely initiate the arbitration process, and engaged in conduct inconsistent with an intent to arbitrate.

We find, on this record, that the Bank waived its right to enforce the arbitration provision. This is because the Bank (1) unreasonably delayed its demand for arbitration, (2) engaged in litigation conduct inconsistent with an

---

[1]This court has taken judicial notice, on its own motion, of the five-volume superior court file in this case, Los Angeles Superior Court No. BC 127133. (Evid. Code, § 452, subd. (d).)

intent to arbitrate, and (3) prejudiced the plaintiffs by causing them to incur costs and attorney fees, and lose the benefits of arbitration.

We find no substantial evidence to support the trial court's determination that the Bank had not waived its right to arbitration. Accordingly, we reverse. Because of our ruling, we need not consider issues relating to the validity or enforceability of the arbitration provision.

The petition is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 1988, Sobremonte opened a checking account at the Bank's Long Beach branch. She signed a signature card with a provision that read, in pertinent part: "By signing this agreement, you begin a deposit account relationship with us. The written information which we give you is part of this agreement and tells you the current terms of each account. We may change these terms at any time. We'll inform you of changes that affect your rights and obligations as a depositor." The reference to "written information we may give you" pertained to the "FACTS About Personal Deposit Account Programs" (FACTS booklet) given by the Bank to new customers. There were no procedures in the FACTS booklet for resolving disputes with the Bank.

In December 1990, Sobremonte and her 84-year-old mother, Esperidion, opened a savings account at the Bank's Glendale branch.[2] They signed a signature card with a provision that read, in relevant part: "The written information we give you is part of this agreement and tells you the current terms of our deposit accounts and VERSATEL Services. We may change these terms at any time. We will inform you of changes that affect your rights and obligations." The reference to "written information we give you" again pertained to the FACTS booklet. There were no procedures in the FACTS booklet for resolving disputes with the Bank.

The Bank subsequently changed the terms of the banking agreement by adding a provision for arbitration of disputes. In June 1992, the Bank notified its deposit customers by mailing an insert with their monthly statement.[3] In October 1992, savings account customers were similarly notified. Neither Sobremonte nor Esperidion recalled receiving notice of this arbitration provision.

---

[2]Esperidion deposited her Supplemental Security Income benefits into the account.
[3]The arbitration provision, which appears in the three- by six-inch one-sided insert, reads:
**"Announcing Changes to Bank of America's Deposit Account Programs**

---

*"Please read this announcement carefully. It discusses a change to the terms of your account with us that we believe is beneficial to both of us. This change is expected to help resolve*

In April 1993, Sobremonte's niece, Sharon Dimaunahan (Dimaunahan) opened a checking account at the Bank's Glendale branch. Sobremonte was a signatory on the account.[4] In September 1994, Dimaunahan's wallet, checkbook and Versatel card were stolen. Subsequently, checks totaling $9,484.56 were deposited in Dimaunahan's account by allegedly unknown persons. A check was then written on the account, payable to "cash," in the sum of $7,400, and accepted by the Bank. The Versatel card was used for purchases and automated teller machine withdrawals in the sum of $1,296.96. The deposited checks were later returned unpaid to the Bank, creating an overdraft in Dimaunahan's account. The Bank, claiming a setoff right, then debited Dimaunahan's account, and the two other accounts on which Sobremonte was a signatory, in the amount of the returned checks and charges. The Bank debited approximately $6,500 from the Sobremonte accounts.

On October 20, 1994, Sobremonte wrote the Bank and inquired why funds were transferred from her and her mother's accounts, and why they did not receive notice of the transaction. Sobremonte stated, in relevant part: "Today, Jennifer of your Glendale branch informed me that she had submitted to you early last week all the information relating to this matter. Sharon Dimaunahan has signed all documentations [*sic*] regarding the forgery of her signature. . . . [¶] You realize, of course, the undue costs of legal proceedings. I am hoping I may not have to travel to California, at your expense, in order to settle this matter at the earliest time possible. . . ."[5] The Bank did not respond.

On December 9, 1994, Sobremonte and Esperidion, now represented by counsel, demanded, in writing, a return of their funds and compensation for

---

*disputes quickly, economically, and fairly. If you have questions about this information, please call us at the 24-hour customer service telephone number on your statement.*

"Effective Immediately

"We strive to remedy our customers' problems or disputes as fast as possible. In most cases, we can resolve a problem in a branch or by telephone.

"If you or we request, any dispute or controversy concerning your deposit account relationship with us will be decided either by *arbitration* or by *reference*. Under these procedures, the dispute is submitted to a neutral party for determination in place of a trial before a judge and jury.

"A dispute or controversy involving one deposit account relationship, or two or more deposit account relationships with at least one common owner, is decided by arbitration under the Commercial Arbitration Rules of the American Arbitration Association.

"Any other dispute or controversy is decided by a reference under the California Code of Civil Procedure Section 638 and related sections. A referee—either an active attorney or retired judge—is selected according to the procedures for selecting arbitrators of the American Arbitration Association and is then appointed by the court in which the action commenced."

[4] The January 1993 FACTS booklet contains a section entitled "RESOLVING DISPUTES OR CONTROVERSIES." The wording parallels the content of the 1992 mailed notice of arbitration.

[5] Sobremonte was living in Florida at the time.

their damages. They informed the Bank that they had meritorious claims for conversion, breach of contract, and defamation, and were entitled to punitive damages for the financial institution's willful conduct. Three months later, on March 10, 1995, the Bank, through its office of general counsel, rejected the request for return of their funds and denied liability for the setoff. The Bank's response neither mentioned the existence of the arbitration provision nor proposed arbitration of the dispute.

On May 3, 1995, Sobremonte and Esperidion filed a complaint against the Bank and its employees Rena Holmes (Holmes) and Fung Der (Der). On May 17, 1995, plaintiffs filed a first amended complaint.[6] On June 16, 1995, the Bank demurred on grounds that the plaintiffs' second, sixth, thirteenth, and fifteenth causes of action failed to state cognizable claims. There was no mention of the arbitration provision. Sobremonte and Esperidion filed an opposition. On July 13, 1995, after a hearing, the trial court overruled the Bank's demurrer as to the sixth, thirteenth, and fifteenth causes of action, and sustained the demurrer, without leave to amend, as to plaintiffs' second cause of action. On July 19, 1995, the Bank served and filed notice of the ruling.

On July 24, 1995, the Bank answered and asserted, as the last of 25 affirmative defenses, that the Bank "is informed and believes and based thereon alleges that the parties hereto have agreed to arbitrate all causes of action asserted in Plaintiffs' Complaint under the auspices of the American Arbitration Association whose decision shall be binding. Bank of America hereby elects to proceed by way of arbitration, and the filing of this Answer shall in no way be considered a waiver of that right to arbitrate." The Bank, however, did nothing more.

On August 25, 1995, the Bank filed an answer on behalf of Der, and asserted 24 affirmative defenses, specifically omitting the arbitration defense.

On November 3, 1995, the trial court set a status conference for December 6, 1995. Sobremonte and Esperidion filed and served their status conference

---

[6]In the first amended complaint, Sobremonte and Esperidion alleged causes of action for wrongful offset (first), conversion (second), declaratory relief (third), negligent handling of an item (Com. Code, § 4103) (fourth), negligence per se (fifth), bad faith in handling of item (Com. Code, § 4103, subd. (e)) (sixth), money had and received (seventh), breach of duties under Financial Code sections 864 and 6660 (eighth), negligence per se (ninth), libel per se (tenth), libel per se (eleventh), negligent handling of an item (Com. Code, § 4103) (twelfth), negligence per se (Com. Code, § 4103, subd. (e)) (thirteenth), bad faith handling of an item (Com. Code, § 4103) (fourteenth), and intentional infliction of emotional distress (fifteenth).

questionnaire on November 30, 1995. The questionnaire contained a section regarding arbitration. Neither the Bank nor Der filed their questionnaire.[7]

Both parties attended the December 6, 1995, status conference, at which the trial court issued several orders relating to discovery and calendared a further conference for February 14, 1996.[8] There were no indications arbitration was discussed at the hearing. The "Arbitration" section of the filed "Initial Status Conference Order" remained blank.

In November 1995 and December 1995, the parties began to conduct discovery. The Bank served on the plaintiffs six sets of interrogatories, form and special, and four sets of demands for production of documents. The plaintiffs served three sets of interrogatories, one set of requests for admissions, several demands for production of documents, and took the depositions of various Bank officers.

On December 13, 1995, the Bank cross-complained against Dimaunahan for, inter alia, indemnity, contribution, and breach of contract.

On January 16, 1996, Sobremonte and Esperidion moved to compel the Bank to serve further responses to inspection demands and produce requested documents. The Bank opposed the motion, but said nothing about arbitration. Six days later, the Bank responded to plaintiffs' reply with a declaration and three attached exhibits. Included as an exhibit was an eight-page proposed stipulated protective order regarding disclosure of confidential information. Again, there was no mention of arbitration. At a January 31, 1996, hearing, the trial court granted in part, and denied in part, plaintiffs' motion to compel, and granted the protective order.

On January 29, 1996, plaintiffs moved for leave to file the operative second amended complaint. This amended pleading alleged against the Bank causes of action for, inter alia, wrongful offset, conversion, bad faith (Com. Code, § 4103, subd. (e)), and intentional infliction of emotional distress. The gravamen of the action was that the Bank improperly exercised its setoff right against alleged statutorily exempt funds in their accounts.

---

[7]The notice of status conference stated, in relevant part: "ALL PARTIES ARE ORDERED to file in Department <u>Dept. 64</u> and serve on all parties of record a Status Conference Questionnaire at least 5 court days prior to the status conference and to have an attorney familiar with the case appear at the hearing."

[8]The status conference order read, in relevant part:
"1) No extensions of time re: discovery
"2) Schedule and conduct depos.
"3) Serve or dismiss Holmes."

On January 30, 1996, the Bank, after reviewing their accounts, served on Sobremonte and Esperidion a Code of Civil Procedure section 998 offer for $1,232.[9] The offer was not accepted.

On February 9, 1996, Sobremonte and Esperidion dismissed the first amended complaint against Holmes.

At a hearing on February 14, 1996, the trial court granted Sobremonte and Esperidion's motion and deemed the amended complaint filed and served. The court held a further status conference and set a February 20, 1996, hearing on the protective order, a final status conference for May 2, 1996, and a jury trial for May 8, 1996. Again, there was no mention of arbitration.

On February 20, 1996, the Bank filed a 12-page motion to transfer the action to the municipal court.[10] The motion was based on the ground that without the alleged damages for emotional distress, Sobremonte and Esperidion's consequential damages were less than the jurisdictional limit. The Bank also separately filed with the motion, an attorney declaration with six attached exhibits, a declaration of Holmes with one attached exhibit, and a declaration of Der with eight attached exhibits. Sobremonte and Esperidion opposed the motion.

Also, on February 20, 1996, the Bank also filed a six-page ex parte application, with declaration, to extend time to produce documents to March 15, 1996. Sobremonte and Esperidion opposed the Bank's ex parte application and argued that if the application were granted, the date for production would be four months after the documents were initially requested, and six weeks after the date the trial court ordered them to be produced.

At a hearing on February 20, 1996, the trial court granted and filed the protective order regarding disclosure of confidential information. On that date, Sobremonte and Esperidion dismissed the second amended complaint against Holmes.

On February 22, 1996, the Bank filed an ex parte application, with declaration, to stay discovery until the motion to transfer was heard on March 6, 1996. The motion was denied.

Five days later, on February 27, 1996, the Bank filed a motion for a protective order to limit the number of depositions Sobremonte and Esperidion could take in this action. The motion consisted of 17 pages, including

[9]The Bank stated that the review "showed that all deposits [in the Esperidion/Sobremonte] account were apparently from Social Security Deposits . . . ."

[10]The Bank sought the transfer on the grounds that "the pleadings and discovery clearly demonstrate that the value of this case does not exceed the municipal court jurisdictional limit."

declaration, and 19 exhibits. The Bank also filed an ex parte application to stay depositions pending the hearing on the motion. The trial court granted the ex parte application and stayed all but five depositions with production of documents until the hearing on the protective order. Sobremonte and Esperidion opposed the motion for the protective order.

On February 29, 1996, the Bank filed three separate documents. The Bank first demurred to the second amended complaint, on behalf of Der, on grounds that the plaintiffs' second, third, and fifteenth causes of action failed to state cognizable claims. The Bank then, on its own behalf, answered the second amended complaint and asserted, as the last of 25 affirmative defenses, that the Bank "is informed and believes and based thereon alleges that the parties hereto have agreed to arbitrate all causes of action asserted in Plaintiffs' Complaint under the auspices of the American Arbitration Association whose decision shall be binding. Bank of America hereby elects to proceed by way of arbitration, and neither the filing of this Answer, nor the Bank's participation in this litigation, shall be considered a waiver of that right to arbitrate." Finally, the Bank filed a notice taking the motion to transfer off calendar. The Bank did not provide a reason.[11]

On March 1, 1996, the Bank served on Sobremonte and Esperidion a demand for arbitration based on an arbitration agreement contained "in a written contract dated August 1994." Sobremonte and Esperidion rejected the demand.

On March 4, 1996, the Bank had default entered against Dimaunahan.

On March 13, 1996, the Bank moved to compel arbitration pursuant to the arbitration provision of the banking agreement between the parties. The Bank asserted that the FACTS booklet, which advised customers that the account agreement could be changed at any time, and the 1992 insert/amendment which added the arbitration clause, constituted an enforceable arbitration agreement between the parties. In opposition, Sobremonte and Esperidion argued they never received the FACTS booklets nor recalled receiving the 1992 insert/amendment which was allegedly sent with their monthly statements. Sobremonte and Esperidion argued there was no enforceable arbitration agreement because the Bank had not given proper notice nor received their consent. They asserted the insert/amendment was inadequate and the Bank's conduct constituted a waiver of the right to arbitrate. The Bank replied that it had the right to alter the terms of the banking agreement and that by signing the signature cards, Sobremonte and

---

[11]In a March 6, 1996, minute order, the trial court stated that the motion to transfer was "[o]ff calendar, pursuant to the telephonic request of counsel for the moving party."

Esperidion had consented to the manner in which the agreement could be amended. The Bank further asserted that it did not waive its right to arbitrate, and the arguments on which Sobremonte and Esperidion relied were rejected by a San Francisco Superior Court in Badie v. Bank of America (Nov. 23, 1994, No. 944916).[12]

On April 9, 1996, the trial court granted the Bank's motion to compel arbitration on grounds that the arbitration provision was within the reasonable expectations of the parties and that Sobremonte and Esperidion were given notice of the amendment. Furthermore, the court determined that the arbitration provision was not unconscionable because the use of neutral American Arbitration Association rules would not cause either party to suffer any unfair advantage. The court made no specific ruling on the issue of waiver. At the same time, the trial court, inter alia, granted the Bank's motion for a protective order and took Der's demurrer off calendar.

On April 25, 1996, the trial court signed the arbitration order and stayed all further trial court proceedings.

Sobremonte and Esperidion filed a petition for writ of mandate. This court issued an alternative writ directing the respondent court either to deny the Bank's motion to compel arbitration or to show cause why it should not be ordered to do so. Respondent court did not comply with our alternative writ. We requested further briefing and invited amici curiae counsel to participate.[13] We heard oral argument on December 10, 1997.

---

[12]In the similar San Francisco case, Badie v. Superior Court, *supra*, No. 944916, the superior court, after a bench trial, found in favor of the Bank and determined that the modification of the banking agreement was valid. Badie is on appeal in the Court of Appeal, First Appellate District, in San Francisco (A068753), and a date for oral argument is pending.

[13]This court invited amici curiae counsel to participate in this action. By letter, we requested that they, along with the parties, address the following issues:

"1. What constitutes the banking agreement between the Bank of America (Bank) and its customers?

"2. Is the Bank able to unilaterally modify or change the terms of the agreement with its customers? If so, are there any limitations?

"3. Is the agreement a contract of adhesion? If the answer is yes, is it still enforceable? Are there analogous situations in other commercial settings?

"4. Was the modification that added the arbitration provision effectively communicated by the form of notice the Bank sent to its customers? Can we find analogous situations in other commercial settings, e.g., in the area of insurance law?

"5. Was the manner of delivery of the notice sufficient so as to make the communication effective?

"6. Was sufficient notice given of the effective date of the modification?

"7. Are there other forms of notice and methods of communication regarding modifications to the account agreement available to the Bank? If so, explain.

## DISCUSSION

### *The Bank Waived Its Right to Compel Arbitration*

#### *Standard of Review*

■ "Arbitration is not a matter of absolute right." (*Bodine* v. *United Aircraft Corp.* (1975) 52 Cal.App.3d 940, 945 [125 Cal.Rptr. 344].) Code of Civil Procedure section 1281.2 provides that "[o]n petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner . . . ."[14]

Whether a party to an arbitration agreement has waived the right to arbitrate is a question of fact, and a trial court's determination on that matter will not be disturbed on appeal if supported by substantial evidence. (*Engalla* v. *Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 983 [64 Cal.Rptr.2d 843, 938 P.2d 903]; *Davis* v. *Blue Cross of Northern California* (1979) 25 Cal.3d 418, 425-426 [158 Cal.Rptr. 828, 600 P.2d 1060]; *Doers* v. *Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 185 [151 Cal.Rptr. 837, 588 P.2d 1261].) As with any appeal, we presume the trial court's order granting Bank's petition to compel arbitration is correct, and it is the responsibility of Sobremonte and Esperidion to show reversible error. (*Walling* v. *Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].)

Since arbitration is a strongly favored means of resolving disputes, courts must "closely scrutinize any claims of waiver." (*Keating* v. *Superior Court* (1982) 31 Cal.3d 584, 604 [183 Cal.Rptr. 360, 645 P.2d 1192], revd. in part on other grounds, *sub nom. Southland Corp.* v. *Keating* (1984) 465 U.S. 1 [104 S.Ct. 852, 79 L.Ed.2d 1]; accord, *Doers* v. *Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d at p. 189.) A party claiming that the right to arbitrate has been waived has a heavy burden of proof. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 605.)

---

"8. Are there any issues of preemption?" In addition to these specific questions, we wrote that "The Court is aware that amici may well choose to raise additional issues, and there is no intent to restrict the scope or content of any amicus brief."

In response, some of the amici curiae addressed the issue of waiver. While the Bank filed a response and a reply to various amici curiae briefs and issues, it failed to further address the issue of waiver.

[14]All further references to code sections will be to the Code of Civil Procedure unless otherwise noted.

In this case, the trial court failed to make any specific ruling on the issue of the Bank's waiver of any arbitration right. However, by granting the Bank's motion to compel arbitration, we can infer that it impliedly found that the Bank had not waived its right to arbitrate.

### Conduct of the Bank

While ". . . no single test delineates the nature of the conduct of a party that will constitute such a waiver," our Supreme Court has "found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] The decisions likewise hold that the 'bad faith' or 'wilful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration. [Citation.]" (*Davis* v. *Blue Cross of Northern California, supra,* 25 Cal.3d at pp. 425-426; see also *Engalla* v. *Permanente Medical Group, Inc., supra,* 15 Cal.4th at p. 983.)

In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party. [Citations.]" (*Peterson* v. *Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467-468.)

Under these factors, we determine that the Bank waived its right to arbitrate.

### Delay

The Bank failed to timely and properly assert its arbitration right. "[A] demand for arbitration must not be unreasonably delayed. When an arbitration agreement does not specify the time within which arbitration must be demanded, a reasonable time is allowed; a party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration. [Citations.] '[W]hat constitutes a reasonable time is a

question of fact, depending on the situation of the parties, the nature of the transaction, and the facts of the particular case. [Citations]' [Citation.] Among the facts a court may consider is any prejudice the opposing party suffered because of the delay. [Citation.]" (*Spear* v. *California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043 [9 Cal.Rptr.2d 381, 831 P.2d 821].)

The Bank first argues that it did not unreasonably delay because it raised arbitration as an affirmative defense in its answers to both the first and second amended complaints. While pleading the arbitration clause in the answer "is a recognized, fully effective and proper means by which a party may force a dispute out of the courts and before an arbitrator" (*Kustom Kraft Homes* v. *Leivenstein* (1971) 14 Cal.App.3d 805, 811 [92 Cal.Rptr. 650], as cited in *Gunderson* v. *Superior Court* (1975) 46 Cal.App.3d 138, 144 [120 Cal.Rptr. 35] [disapproved on other grounds in *Doers* v. *Golden Gate Bridge etc. Dist., supra,* 23 Cal.3d at p. 188), mere assertion of this affirmative defense, without more, does not preclude a finding that subsequent conduct may cause a waiver of that right. (*Davis* v. *Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 217 [69 Cal.Rptr.2d 79].) " 'A right to compel arbitration is not, unless expressly provided for in the agreement, self-executing. If a party wishes to compel arbitration, he must take active and decided steps to secure that right, and is required to go to the court where plaintiff's action lies. [Citations.]' " (*Bodine* v. *United Aircraft Corp., supra,* 52 Cal.App.3d at p. 945.)

The record reflects that as early as December 1994, the Bank was on notice that Sobremonte and Esperidion were going to legally pursue their dispute with the Bank if the money debited from their accounts was not returned. Two months earlier, Sobremonte wrote the Bank, requested her funds and commented on "the undue costs of legal proceedings." When the Bank did not respond, Sobremonte and Esperidion hired counsel to legally pursue their claim. In March 1995, the Bank denied liability but failed to mention the remedy of arbitration, even though it had allegedly sent notice of the addition of the provision three years prior. In May 1995, Sobremonte and Esperidion filed their complaint. Two months later, in July 1995, the Bank answered the amended complaint and asserted arbitration as the last of 25 affirmative defenses. The Bank then did nothing to bring about arbitration until 10 months after service of the complaint, and 6 weeks prior to trial. The fact that the Bank pleaded arbitration as an affirmative defense in its answer is merely one factor for the court to consider.

*Conduct Inconsistent With Arbitration*

Further, the Bank's conduct in the 10 months prior to filing the motion to compel was inconsistent with an intent to arbitrate. The Bank had the

responsibility to "timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation." (*Davis* v. *Continental Airlines, Inc., supra,* 59 Cal.App.4th at p. 216.) In the ten months between service of the complaint and the motion to compel, the Bank filed two demurrers, one cross-complaint, and one motion to transfer the case to the municipal court. The Bank also participated in five trial court hearings, including two status conferences, and extensive discovery. The Bank actively litigated the case and never objected to the court's setting a trial date or to the discovery propounded by Sobremonte and Esperidion on grounds of arbitration. The Bank objected, however, to a number of the propounded interrogatory and document requests. Not one of those objections was based on arbitration. Additionally, the discovery protective orders and oppositions to motions to compel filed by the Bank failed to contain any argument based on arbitration.

In *Davis* v. *Continental Airlines, Inc., supra,* 59 Cal.App.4th 205, an action with a factual scenario similar to our case, the appellate court found waiver where defendants included an affirmative defense of arbitration in their answers, but "they sat on that defense and conducted discovery before bringing their motion months later." (*Id.* at p. 210.) In that case, "[p]laintiff filed her complaint on January 24, 1995, and served it on defendants in March 1995 . . . . Following a stipulated extension of time to answer, defendants answered the complaint on May 30, 1995. Although each defendant's answer alleged, among other affirmative defenses, that plaintiff's action was barred for her failure to have pursued 'binding internal grievance procedures' . . . or 'contractual requirements that plaintiff submit her dispute to arbitration' . . . , defendants did not promptly demand arbitration. Not until November 22, 1995, did defendants move to stay the action (Code Civ. Proc., § 1281.4) pending determination of their forthcoming motion to compel arbitration, which they did not file until January 3, 1996, . . ." (*Id.* at p. 208.) Furthermore, "[p]rior to seeking a stay or petitioning to compel arbitration, defendants served plaintiff with a discovery demand for, and obtained by August 1, 1995, documents in 86 categories totaling 1,600 pages and took plaintiff's videotaped deposition for 2 days on August 15 and 16, 1995, which produced a 410-page deposition transcript. Plaintiff also agreed . . . to respond to [one of the defendant's] interrogatories by December 8, 1995. [The defendant] responded to plaintiff's interrogatories and request for documents in August 1995." (*Ibid.*)

The *Davis* court, in affirming the trial court's denial of defendants' motion to compel arbitration, determined that in the six months prior to filing the motion to compel defendants "used court discovery procedures to obtain 1,600 pages of documents from plaintiff in 86 categories and to take

plaintiff's 2-day, 410-page videotaped deposition. The trial court could reasonably infer from these facts that defendants unreasonably delayed their motion to compel arbitration in order to take advantage of court discovery procedures to learn plaintiff's strategies, evidence, and witnesses and to pin plaintiff down to a particular version of the facts." (59 Cal.App.4th at p. 213.) As in *Davis,* this court can similarly infer that the Bank also took " 'advantage of judicial discovery procedures not available in arbitration.' " (*Peterson* v. *Shearson/American Exp., Inc., supra,* 849 F.2d at p. 468.)

### Prejudice

■ The Bank's mere participation in litigation and discovery, without prejudice to Sobremonte and Esperidion, would not necessarily compel a finding of waiver. (*Keating* v. *Superior Court, supra,* 31 Cal.3d at p. 605; *Davis* v. *Continental Airlines, Inc., supra,* 59 Cal.App.4th at pp. 210, 216.) "[T]he party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration. [Citation.]" (59 Cal.App.4th at p. 212.) "When determining whether the other party has been prejudiced, we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process. [Citation.]" (*S & H Contractors* v. *A.J. Taft Coal Co.* (11th Cir. 1990) 906 F.2d 1507, 1514.) In *Kaneko Ford Design* v. *Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228-1229 [249 Cal.Rptr. 544], the court found prejudice "from . . . delay in the forms of time and effort spent, legal expenses and costs incurred, and the disclosure of [the other party's] defenses and strategies."

■ In our case, Sobremonte and Esperidion were prejudiced by the Bank's delay and corresponding activities. As a result, they spent 10 months preparing their case for a full trial at a considerable expenditure of time and money. To prove their claim, Sobremonte and Esperidion engaged in judicial discovery procedures that were more expansive than those available through arbitration. (*Davis* v. *Continental Airlines, Inc., supra,* 59 Cal.App.4th at pp. 212-213.) They participated in hearings, status conferences and opposed the Bank's various motions and ex parte applications. Their counsel expended over 200 hours in trial preparation. Sobremonte and Esperidion incurred attorney fees and costs for conducting discovery and taking depositions. They were well into case preparation, and a little over a month to trial, when the Bank made its motion to compel.

The Bank used the judicial process in an initial attempt to limit its own liability and narrow the case brought by Sobremonte and Esperidion against it. The Bank first unsuccessfully attempted to eliminate Sobremonte and

Esperidion's claims, specifically the one for emotional distress, by filing demurrers. Then, the Bank engaged in expansive discovery. Using that information, the Bank proceeded with a section 998 offer, which was rejected.

The Bank then attempted to limit Sobremonte and Esperidion's ability to obtain discovery. It delayed turning over documents and failed to fully respond to requests. It forced Sobremonte and Esperidion to compel production of the information. It sought protective orders to limit the number of depositions that Sobremonte and Esperidion could conduct. At the same time, the Bank attempted to transfer the case to the municipal court. In support of the transfer motion, the Bank argued that aside from the "speculative" emotional distress claim, which still existed, the parties' damages did not meet the jurisdictional requirement.

After 10 months of litigation the Bank finally moved to compel arbitration.

As the *Davis* court concluded, "[t]here is more prejudice in the present case than plaintiff's mere incurring of court costs or legal expenses. The vice involved here, whether characterized as 'unreasonable delay,' 'bad faith misconduct,' 'gamesmanship' or 'unilateral discovery' . . . is that defendants used the discovery processes of the court to gain information about plaintiff's case which defendants could not have gained in arbitration. After obtaining discovery from plaintiff by court processes, defendants then belatedly sought to change the game to arbitration, where plaintiff would not have equivalent discovery rights. [Citations.] . . . . [This] disclosure of defenses and strategies is a prejudice which accrues in such circumstances. [Citations.]" (*Davis* v. *Continental Airlines, Inc., supra,* 59 Cal.App.4th. at p. 215.)

Sobremonte and Esperidion have been further prejudiced by their now inability to take advantage of the benefits of arbitration. Arbitration is an expedient, efficient and cost-effective method to resolve disputes. If we consider the amount of time and money they have already spent in the judicial system, any benefits they may have achieved from arbitration have been lost.

Other courts have found waiver with facts similar to those in our case. In *Peterson* v. *Shearson/American Exp., Inc., supra,* 849 F.2d 464, the court found Shearson waived its right to arbitrate state law claims because it prepared for a scheduled trial without objecting on the grounds of arbitration, it sought arbitration close to the trial date, and it took advantage of

discovery devices such as depositions which were not available in arbitration. (*Id.* at p. 468.) Furthermore, Shearson failed to file its motion to compel arbitration until about five weeks prior to the rescheduled trial. (*Ibid.*) The court found this delay adversely affected and probably misled the other party who had already prepared for trial. (*Ibid.*)

In *S & H Contractors* v. *A.J. Taft Coal Co., supra,* 906 F.2d 1507, S & H waited eight months after filing suit to request arbitration. (*Id.* at pp. 1508-1509.) During those eight months, Taft filed two motions and S & H took the depositions of five of Taft's employees. (*Id.* at p. 1514.) The court found as a matter of law that "Taft was prejudiced by S & H's delay in demanding arbitration and by its invocation of the litigation process," and S & H had "acted inconsistently with its arbitration right." (*Ibid.*)

The Bank argues that it could not have actively compelled arbitration earlier than March 1996 because individual defendants, Holmes and Der, were not dismissed from the action until February 1996. To support that argument, the Bank relies on section 1281.2, subdivision (c)(1), which provides: "If the court determines that a party to the arbitration is also a party to litigation in a pending court action or special proceeding with a third party as set forth under subdivision (c) herein, the court (1) may refuse to enforce the arbitration agreement . . . ."

The Bank's contention is without merit. Section 1281.2 gives the trial court discretion to tailor an order when nonsignatories to an arbitration agreement are also named in the litigation. While the court may refuse to enforce the agreement, it may also order certain parties into arbitration and stay the action as to third parties. (§ 1281.2, subd. (c)(3).)[15] Therefore, the presence of Holmes and Der in the action did not prevent the Bank from moving to compel at an earlier date.

A consideration of all factors leads to the conclusion that the Bank waived its right to compel arbitration. We acknowledge that arbitration is the preferred method of resolving disputes. However, the benefits it can provide, to both the parties and an already overburdened judicial system, become illusory when there is a failure to timely and affirmatively implement the procedure. Mere announcement of the right to compel arbitration is not enough. To properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2)

[15]Section 1281.2, subdivision (c)(3) provides, in relevant part, that "[i]f the court determines that a party to the arbitration is also a party to litigation in a pending court action . . . , the court . . . may order arbitration among the parties who have agreed to arbitration and stay the pending court action . . . pending the outcome of the arbitration proceeding; . . ."

participate in conduct consistent with the intent to arbitrate the dispute. Both of these actions must be taken to secure for the participants the benefits of arbitration.

The Bank relies heavily on the principle that since waiver is a question of fact, a trial court's ruling cannot be disturbed on appeal if it is supported by substantial evidence. We have thoroughly reviewed the record and find that the only affirmative act the Bank took to invoke arbitration was to allege its right to arbitrate as an affirmative defense in an answer. The remainder of the Bank's conduct was inconsistent with an intent to arbitrate. We find no substantial evidence to support the trial court's determination that the Bank had not waived its right to arbitration.

Accordingly, we find, as a matter of law, that the Bank waived its right to arbitrate this dispute. The order granting the Bank's motion to compel arbitration shall be reversed.

## DISPOSITION

The petition is granted. The alternative writ is discharged.

Croskey, Acting P. J., and Aldrich, J., concurred.