Filed 1/21/14  Dunham v. Sierra Process Systems CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| RICHARD DUNHAM,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SIERRA PROCESS SYSTEMS, INC.,<br><br>Defendant and Appellant. | A137240<br><br>(Contra Costa County<br>Super. Ct. No. C12-00879) |

Richard Dunham filed a lawsuit against Sierra Process Systems, Inc. (SPS) for wrongful termination and other causes of action related to his employment with SPS. In his employment application with SPS, Dunham had agreed to arbitrate any dispute arising from his employment. SPS answered Dunham's complaint, participated in discovery, failed to state that it was willing to participate in arbitration in its case management statement, and attended a case management conference with the court without mentioning arbitration. Only after engaging new counsel to take over its representation in this matter did SPS file a petition to compel arbitration, almost six months after Dunham had filed his complaint.

The trial court denied SPS's petition because it found that SPS had waived its right to compel arbitration. On appeal, SPS contends that the trial court's denial of the petition was not supported by substantial evidence. We disagree and affirm.

1

**BACKGROUND**

**A.** *The Arbitration Clause*

SPS hired Dunham as an employee on November 30, 2010. On that date, Dunham signed an employment application that contained an arbitration clause: "I agree to submit to binding arbitration all disputes and claims arising out of this application and, in the event that I am hired, all disputes and claims arising out of my employment. This agreement includes every type of dispute that may be lawfully submitted to arbitration, including claims of wrongful discharge, discrimination, harassment, or any injury to my physical, mental, or economic interests. This means that a neutral arbitrator, rather than a court or jury, will decide the dispute. As such, I am waiving my right to a court or jury trial. I agree that any arbitration will be conducted in accordance with the rules of the American Arbitration Association [(American Arbitration)]."

**B.** *The Pleadings*

On April 11, 2012,[1] Dunham filed a complaint alleging that SPS wrongfully terminated his employment in retaliation for reporting workplace safety violations to the California Division of Occupational Safety and Health (Cal/OSHA), in violation of Labor Code section 1102.5 and in violation of public policy. The complaint also alleged causes of action for intentional infliction of emotional distress; failure to pay overtime wages; waiting time penalties; failure to reimburse expenses; failure to furnish accurate, itemized wage statements; and unfair competition, in violation of Business and Professions Code section 17200 et seq. On May 16, Dunham filed an amended complaint to include civil penalties pursuant to Labor Code section 2698 et seq.

SPS filed its answer on June 4, stating that it denied the allegations of the unverified complaint in its entirety. The answer raised 24 affirmative defenses in conclusory language. SPS did not raise a right to submit the dispute to arbitration as an affirmative defense.

---

[1] All subsequent dates are in the year 2012.

**C.** *Discovery*

On May 16, Dunham served his first set of requests for production, form interrogatories, and special interrogatories on SPS. SPS responded to these requests on July 12. In its response to form interrogatory No. 200.1, SPS cited Dunham's employment application as supporting an assertion that Dunham's employment was "at will."

On July 27, Dunham's counsel informed SPS that his investigation had revealed that SPS had been acquired by Clean Harbors, Inc. (Clean Harbors) Dunham's counsel requested an opportunity to meet and confer so that Dunham could determine whether Clean Harbors should be named as a defendant. SPS's counsel replied on the same day that there was no need to name Clean Harbors as a defendant and suggested a time to confer.

On July 30, counsel for Dunham and SPS conferred by phone and Dunham's counsel sent SPS a list of questions concerning Clean Harbors by email. On August 10, counsel for SPS replied that Dunham's questions went "well beyond that required of any due diligence effort to determine the proper identity of a defendant." The reply further stated that "the transaction with Clean Harbors was an asset sale and SPS continues to exist and operate." The response concluded that SPS "fail[ed] to see any strategic value to the opening of a peripheral litigation front."

On August 3, SPS served its first set of discovery requests, consisting of form interrogatories.

On August 7, SPS served a supplemental response to one set of Dunham's form interrogatories. In its response to interrogatory No. 200.1, SPS quoted directly from the arbitration clause in Dunham's employment application. The arbitration clause was also referenced in the response to interrogatory No. 200.4.

On August 8, SPS served its second set of discovery requests, consisting of special interrogatories and requests for production. That same day, SPS also served a deposition notice for Dunham.

3

On August 14, Dunham served his second set of discovery requests, consisting of requests for production, and special interrogatories. In part, the requests concerned the alleged acquisition of SPS by Clean Harbors.

On August 21, SPS served an amended notice for Dunham's deposition, rescheduling the deposition for October 3 and 4, 2012.

On September 28, Dunham served his responses to SPS's first set of discovery requests. On the same date, SPS served responses to Dunham's second set of discovery requests.

**D.** *The Case Management Statements and Conference*

On August 14, Dunham and SPS filed case management statements. In section 5, SPS requested a nonjury trial. Section 10 of the case management statement form concerns alternative dispute resolution (ADR). In that section, SPS's counsel indicated that he had provided SPS with an ADR information package and discussed ADR options with SPS. The form also calls for the filing party to indicate the ADR processes in which it is willing to participate. SPS indicated that it was willing to participate in a settlement conference, but did not indicate that it was willing to participate in any other ADR process, including binding private arbitration.

On August 23, SPS deposited with the court a non-refundable jury fee of $150.00.

On August 29, Dunham and SPS participated in a case management conference with the court. SPS did not discuss or mention arbitration.

**E.** *SPS Retains New Counsel*

In early September, SPS retained new counsel to take over as attorney of record in this matter. SPS filed a substitution of attorney with the court on September 7.

SPS's new counsel contacted Dunham's counsel on September 5, 2012, and the parties agreed to a mutual exchange of all outstanding discovery on or before September 28.

4

**F.** *SPS Requests Arbitration*

On September 11, SPS's new counsel sent Dunham's counsel a letter stating that she had "discovered" the arbitration provision and requesting that Dunham stipulate to submit the matter to arbitration.

On September 12, Dunham rejected SPS's request for arbitration. On September 19, SPS's counsel called Dunham's counsel to advise that SPS intended to proceed with filing a petition to compel arbitration. She again inquired whether Dunham would consider stipulating to arbitration and a stay of discovery. Dunham's counsel stated that he would confer with Dunham. They did agree that Dunham's deposition would not take place in October.

On September 20, Dunham's counsel informed SPS that Dunham had instructed him to oppose any petition to compel arbitration. Dunham also instructed his counsel to oppose a stay of discovery.

**G.** *SPS's Petition to Compel Arbitration*

SPS filed a petition to compel arbitration on October 1. The notice of hearing and the petition itself state a preparation date of September 25, 2012. Consistent with the September 25 date, SPS argued that Dunham had not been prejudiced by SPS's participation in discovery because Dunham had not yet responded to SPS's discovery requests. Dunham opposed the petition.

On November 2, the court held a hearing on SPS's petition. As the hearing began, the court stated: "We know what happened, don't we? There was a change of counsel and a change of strategy." SPS's counsel stated that her predecessor "discovered the arbitration provision" only after SPS had provided its initial responses to Dunham's discovery requests. From that point, SPS was "in the process of doing the research and analysis to make sure that arbitration was actually an enforceable provision before they wasted judicial resources and everyone's time and money in filing a petition to compel arbitration." That research was underway as current counsel took over representation of SPS in the matter. The court expressed skepticism concerning the assertion of ongoing research: "Well, you could decide the legal issues of the arbitration enough to make that

5

decision over a weekend." The court concluded that "the totality of these circumstances is such that the moving party has waived the right to arbitrate."

The court filed its order denying SPS's petition on November 16. The order cited the factors, listed in *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980 (*Sobremonte*), that a court should consider in determining whether a party has waived a right to arbitrate.[2] The court found that four of the factors weighed in favor of waiver and the other two were neutral or did not apply. In support of that determination, the court specifically found: (1) "[SPS's] actions are inconsistent with the right to arbitrate"; (2) "[SPS] 'substantially invoked' the litigation machinery by serving discovery upon [Dunham]"; (3) "[t]he discovery undertaken gave [SPS] an advantage not normally available in arbitration proceedings"; and (4) "[i]f [SPS] intended to invoke its arbitration right, it misled [Dunham] to his prejudice."

SPS timely filed a notice of appeal on December 3.

## DISCUSSION

SPS contends the trial court's determination that SPS waived its right to invoke arbitration was not supported by substantial evidence. As discussed below, we conclude otherwise.

### I. *Legal Standard*

California state law "reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. [Citation.] Although a court may deny a petition to compel arbitration on the ground of waiver ([Code Civ. Proc.,] § 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof." (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).)

"[N]o single test delineates the nature of the conduct of a party that will constitute [a waiver of the right to arbitrate]." (*Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 426.) "In the past, California courts have found a waiver of the right to

---

**2** We refer to the factors considered in *Sobremonte* as the *Sobremonte* factors. We list and consider them in detail below.

6

demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] The decisions likewise hold that the 'bad faith' or 'wilful misconduct' of a party may constitute a waiver and thus justify a refusal to compel arbitration." (*Id.* at pp. 425-426.)

"In determining waiver, a court can consider '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party. [Citations.]' [Citation.]" (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 992, quoting *Peterson v. Shearson/American Exp. Inc.* (10th Cir. 1988) 849 F.2d 464, 467-468; adopted in *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

" 'Waiver does not occur by mere participation in litigation . . . .' [Citation.] ' "[A]s an abstract exercise in logic it may appear that it is inconsistent for a party to participate in a lawsuit for breach of a contract, and later to ask the court to stay that litigation pending arbitration. Yet the law is clear that such participation, standing alone, does not constitute a waiver [citations], for there is an overriding federal policy favoring arbitration . . . . [M]ere delay in seeking a stay of the proceedings without some resultant prejudice to a party [citation], cannot carry the day." ' " (*Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1450 (*Adolph*).)

"Prejudice typically is found only where the petitioning party's conduct has substantially undermined [the] important public policy [favoring arbitration as a speedy and relatively inexpensive means of dispute resolution] or substantially impaired the

7

other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation]." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.)

We review the trial court's finding that SPS waived its right to arbitrate under the substantial evidence standard.[3] (*Adolph*, *supra*, 184 Cal.App.4th at pp. 1449-1450; *Doers v. Golden Gate Bridge Etc. Dist.* (1979) 23 Cal.3d 180, 185.) Under this standard, we resolve conflicts in evidence in favor of the prevailing party and draw all reasonable inferences to uphold the trial court's decision. (*Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, 300.)

## II. *Substantial Evidence Supports a Finding of Waiver*

Based on the record before us, this is a case in which the trial court could reasonably have found that SPS had not waived its right to compel arbitration. However, when reviewing under the substantial evidence standard we do not reweigh the evidence and we must affirm if the determination of waiver is supported by substantial evidence. We examine each of the *Sobremonte* factors below to determine if substantial evidence supports a conclusion that the factor favors a finding of waiver.

## A. *Whether SPS's Actions were Consistent with the Right to Arbitrate*

In determining that SPS's actions were inconsistent with the right to arbitrate, the trial court stated: "It seems rather clear that [SPS] was fully active in dealing with the action by trial court litigation until it changed counsel in September. [SPS] participated

---

[3] SPS urges us to review the question of waiver de novo, citing *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1202: " ' "When . . . the facts are undisputed and only one inference may reasonably be drawn, the issue [of waiver] is one of law and the reviewing court is not bound by the trial court's ruling." [Citation.]' " Because the facts of this case support inferences favoring a finding of waiver, we do not review de novo.

fully in pleadings, discovery and case management. Its counsel filed a case management conference statement which indicated its availability for trial and intentionally did *not* check the box for 'binding arbitration'. Obviously new counsel just had a different 'strategy' than the original counsel." We share the trial court's assessment.

We must presume proper due diligence in the preparation of SPS's pleadings and, thus, that SPS's counsel reviewed Dunham's employment records and was aware of the arbitration clause in the employment application prior to filing SPS's answer to Dunham's complaint. No credible evidence supports an inference to the contrary.[4]

SPS could have petitioned to compel arbitration in lieu of filing an answer to Dunham's complaint. (Code Civ. Proc., § 1281.7.) Instead, SPS answered Dunham's complaint and, despite pleading a very lengthy list of affirmative defenses, failed to plead a right to arbitration as an affirmative defense. "At a minimum, the failure to plead arbitration as an affirmative defense is an act inconsistent with the later assertion of a right to arbitrate." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 (*Guess?*).)

SPS had the responsibility to "timely seek relief either to compel arbitration or dispose of the lawsuit, before the parties and the court have wasted valuable resources on ordinary litigation." (*Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 216.) Instead, SPS responded to Dunham's discovery requests and propounded its own discovery requests. SPS participated in meet and confer sessions, prepared a case management statement, and attended a case management conference with the court. In the entire course of these proceedings, up until SPS hired new counsel, SPS never

---

[4] SPS's assertion during the hearing on its petition that SPS's original counsel had "discovered" the arbitration agreement only after it had provided its initial responses to Dunham's discovery requests is both unsupported by the evidence and not credible. Those initial responses directly cited Dunham's employment application, which contained the arbitration clause. The further assertion that original counsel, since discovering the arbitration agreement, had been researching whether the arbitration clause was enforceable was also unsupported and not credible. As the trial court commented, such a determination could be made "over a weekend."

asserted its right to arbitrate. To the contrary, SPS's case management statement indicated that it was *not* willing to participate in binding private arbitration.[5]

We conclude that ample evidence supports a finding that SPS's actions were inconsistent with a right to arbitrate.[6]

## B. *Invocation of Litigation Machinery and Degree of Preparation for the Lawsuit*

SPS served discovery requests on Dunham, including a notice and a later re-notice of Dunham's deposition. SPS indicated in its case management statement that the case would be ready for trial within 12 months of the date of the filing of the complaint. SPS paid a non-refundable jury fee in anticipation of trial[7] and participated in the initial case management conference. After SPS engaged new counsel, the parties mutually agreed that responses to outstanding discovery requests would be completed by September 28, 2012. Nothing in the record indicates that additional discovery requests from either party would be forthcoming.

---

[5] SPS argues that "it is not unreasonable that the failure to simply check the box for the 'binding arbitration' was either (1) an inadvertent mistake, or (2) SPS'[s] prior counsel had not yet completed its investigation and analysis as to whether binding arbitration was an appropriate and enforceable option for resolving this matter." The record provides no reason to believe that SPS's original counsel completed the case management statement with anything less than the proper care it deserved.

[6] SPS cites *Sobremonte* as a case in which the court found waiver based on conduct that, in being inconsistent with the right to arbitrate, was well beyond SPS's conduct. We need not discuss *Sobremonte* because our task is to decide whether the evidence adduced here supports a finding of waiver.

[7] SPS claims that its payment of the jury fee was not inconsistent with an intent to arbitrate because it was required by Code of Civil Procedure section 631. The court understood SPS's argument to be that it paid the fee to avoid incurring a jury waiver should it not prevail in a later petition to compel arbitration. However, SPS had indicated in its case management statement that it was requesting a nonjury trial, so Code of Civil Procedure section 631 presented no requirement that SPS pay a jury fee. Even if SPS had demanded a jury trial, or wished to preserve its right to later do so, it would not have waived that right so long as the jury fee had been paid by December 31. (Code Civ. Proc., § 631, subd. (d).) Thus, SPS could have waited to pay a jury fee until after a ruling on its petition to compel arbitration.

10

We consider these facts to be substantial evidence that SPS had substantially invoked the litigation machinery and that both parties were well into preparation of the lawsuit before SPS petitioned to compel arbitration.[8]

In arguing that it had not substantially invoked the machinery of litigation, SPS cites *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*). The *Roman* court denied a petition for writ of mandate challenging the trial court's grant of a petition to compel arbitration. (*Id.* at p. 1466.) In *Roman*, "Flo-Kem filed its notice of petition to compel arbitration a little more than two months after Roman filed her complaint. At the time, no substantive discovery responses had been served by either side, and no formal hearings had taken place on the discovery issues." (*Id.* at p. 1479.) SPS recognizes that "the conduct of the petitioning party in *Roman* is substantially less than what occurred here," so SPS's reliance on *Roman* is curious. Here, the petition to compel arbitration was filed almost six months after Dunham filed his initial complaint, substantially more than the two months in *Roman*. In further contrast, both parties had served discovery requests and had received responses, and the parties had participated in the case management conference. Nothing in *Roman* suggests that, as a matter of law, the facts of this case are insufficient to support a finding that SPS substantially invoked the machinery of litigation and that the parties were well into preparation of the lawsuit.

## C. *Whether SPS Delayed for a Long Period Before Seeking a Stay*

"When no time limit for demanding arbitration is specified, a party must still demand arbitration within a reasonable time. [Citation.] . . . '[W]hat constitutes a reasonable time is a question of fact, depending upon the situation of the parties, the nature of the transaction, and the facts of the particular case.' " (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30.)

---

[8] SPS points out that California Rules of Court required the preparation of the case management statement and participation in the case management conference. This is true, but beside the point. That SPS followed the rules in engaging the machinery of litigation neither diminishes that engagement nor obviates SPS's election in the case management statement not to request binding arbitration.

In this case, even though the trial court could reasonably infer that SPS was aware of the arbitration clause at all times, almost six months elapsed between the time that Dunham filed his original complaint and the time that SPS filed its motion to compel arbitration. Other courts have found a waiver where there have been comparable delays. (See *Guess?*, *supra*, 79 Cal.App.4th at p. 556 [four month delay]; *Adolph*, *supra*, 184 Cal.App.4th at p. 1449 [six month delay]; *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832, 839 [five month delay after answering complaint]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1229 [between five and six month delay].)[9] Considering SPS's actions that were inconsistent with an intent to arbitrate, we conclude that ample evidence supports a finding that SPS's delay was unreasonably long.

**D. *Whether SPS Filed a Counterclaim Without Seeking a Stay for Arbitration***

Because SPS had no counterclaims, this factor is not applicable to the facts of the case before us.

**E. *Whether Important Intervening Steps Had Taken Place***

This factor asks " ' "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place." ' " (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 992.) The trial court apparently counted this factor as favoring waiver because it made the finding that "[t]he discovery undertaken gave [SPS] an advantage not normally available in arbitration proceedings." We find no evidence in the record that SPS gained an advantage in discovery that is not normally available in arbitration and conclude that this factor weighs against finding a waiver.

SPS argues that Dunham's responses to its interrogatories and requests for production could not have given SPS an advantage because SPS could have propounded the same discovery requests in an arbitration proceeding. Rule 9 of the Employment

---

[9] SPS distinguishes these cases, and others that Dunham cites, from the instant case. While all of these cases have differing facts, the point here is that a four- to six-month delay is not de minimis or, as a matter of law, insufficient to establish an unreasonable delay.

Arbitration Rules and Mediation Procedures[10] provides: "The arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." In support of their argument, SPS again cites *Roman*, where the court observed: "[T]he discovery requests Flo-Kem served (a set of form interrogatories and a request for production of documents) were authorized under the [American Arbitration] rules; thus the discovery sought (though not received) did not seek to take advantage of discovery tools unavailable in arbitration." (*Roman*, *supra*, 172 Cal.App.4th at p. 1479.)

Here, in contrast to *Roman*, Dunham actually served responses to SPS's discovery requests, but the content of those responses were not before the trial court, and are not in the record before us. Thus, there was no evidence that SPS gained any advantage from Dunham's responses.

Dunham argues that he "propounded written discovery and met and conferred with SPS's counsel and, in doing so, disclosed certain trial tactics. Among other things, Dunham disclosed to SPS his investigation of the circumstances of Clean Harbors's acquisition of SPS . . . and his research into the legal bases for naming Clean Harbors as a defendant." Dunham further argues that the acquisition would have been irrelevant in arbitration, so that he would not have disclosed his intent to name Clean Harbors as a defendant in the course of arbitration.

When the party seeking to compel arbitration has engaged in conduct during the discovery process that causes the other party to disclose some of its trial tactics and these disclosures would not have been required in arbitration, these disclosures may establish prejudice to the other party that supports finding a waiver of the right to compel arbitration. (*Guess?*, *supra*, 79 Cal.App.4th at p. 558.) However the disclosures must actually have been prejudicial, giving the party seeking to compel arbitration an advantage it would not have had in arbitration. Dunham does not explain how

_____

**10** Available at http://www.adr.org/aaa/faces/rules/searchrules/rulesdetail ?doc=ADRSTG_004366.

knowledge that he was considering naming Clean Harbors as a defendant gave SPS an advantage. Whether or not Clean Harbors might have been liable to satisfy a judgment against SPS would not be relevant to the question of SPS's liability to Dunham.

We find no evidence in the record that supports a finding that an important intervening step, such as utilizing discovery procedures not available in arbitration, or obtaining information in discovery that would not have been revealed in arbitration, had taken place.

## F. *Whether the Delay was Prejudicial to Dunham*

The trial court's order denying SPS's petition stated: "If [SPS] intended to invoke its arbitration right, it misled [Dunham] to his prejudice. Attending court conferences, preparing full discovery responses, and relying upon case management discussions, all cost time and money."

SPS contends that the expenditure of time and money, standing alone, is not sufficient for a finding of prejudice. "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.)

Dunham, in his opposition to SPS's petition, did not argue for prejudice based solely on his expenditure of time and money. He also pointed out that if SPS had timely asserted its right to arbitrate, "the efficiencies associated with arbitration would have been realized." Arbitration is meant to be a speedy and relatively inexpensive means of dispute resolution and delay by the party seeking to compel arbitration may prejudice the other party by depriving it of the benefits that arbitration is meant to provide. "Prejudice typically is found only where the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes*, *supra*, 31 Cal.4th at p. 1204.)

In *Sobremonte*, the court found that the parties opposing the petition to compel arbitration had "been further prejudiced by their now inability to take advantage of the

14

benefits of arbitration. Arbitration is an expedient, efficient and cost-effective method to resolve disputes. If we consider the amount of time and money they have already spent in the judicial system, any benefits they may have achieved from arbitration have been lost." (*Sobremonte*, *supra*, 61 Cal.App.4th at p. 996.) "[A] petitioning party's conduct in stretching out the litigation process itself may cause prejudice by depriving the other party of the advantages of arbitration as an 'expedient, efficient, and cost-effective method to resolve disputes.' [Citation.] Arbitration loses much, if not all, of its value if undue time and money is lost in the litigation process preceding a last-minute petition to compel." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 948.)

Considering the almost six-month delay and the time and effort already expended by Dunham, substantial evidence supports a finding that Dunham had been deprived of the advantages of arbitration, and hence that SPS's conduct was prejudicial to Dunham.

**G. *Conclusion***

We conclude that four of the *Sobremonte* factors are supported by substantial evidence that favors a finding of waiver, even though they are not the same four factors used by the trial court. One factor does not apply to the facts of the case and the remaining factor favors a finding of non-waiver. Because four of the six factors favor a finding of waiver, including the crucial factor of prejudice to the party opposing the petition to compel arbitration, substantial evidence supports the trial court's determination that SPS waived its right to compel arbitration.

**DISPOSITION**

The order denying SPS's petition to compel arbitration is affirmed. Dunham is awarded costs.

15

                                         _____

                                         Brick, J.*

We concur:


_____

Kline, P.J.


_____

Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16