Filed 6/16/23 Paramount Exclusive Insurance Services v. Cabir CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| PARAMOUNT EXCLUSIVE INSURANCE SERVICES, INC., | B315279 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV20468) |
| v. | |
| SHANTELLE CABIR, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Christopher K. Lui, Judge.  Reversed and remanded with directions.

Moore Ruddell, Bonita D. Moore and Howard D. Ruddell for Defendant and Appellant.

Michelman & Robinson, Jeffrey D. Farrow, Reuben A. Ginsburg and Samantha Drysdale for Plaintiff and Respondent.

———————————

# INTRODUCTION

Paramount Exclusive Insurance Services, Inc. (Paramount) filed this action against its former sales agent Shantelle Cabir, alleging Cabir breached a confidential information and non-solicitation agreement and misappropriated Paramount's trade secrets by soliciting Paramount's customers.

Cabir filed a class action cross-complaint against Paramount, alleging that Paramount deliberately misclassified her and other sales agents as independent contractors and that Paramount wrongfully terminated her in retaliation for complaints about the misclassification.

Over Cabir's opposition, the court granted Paramount's motion to compel arbitration of Cabir's individual claims in the cross-complaint. Cabir then moved to compel arbitration of the claims asserted in Paramount's complaint. The trial court denied Cabir's motion, concluding Cabir had waived the right to arbitrate. Cabir timely appealed from the order denying the motion to arbitrate.

We reverse and remand with directions to the trial court to vacate its denial and enter a new order granting the motion to compel arbitration. Cabir's delay in seeking to compel arbitration was reasonable, and Paramount has not demonstrated prejudice from the delay. The only reasonable inference that can be drawn from the undisputed evidence is that there was no waiver, and the trial court's conclusion to the contrary is not supported by substantial evidence. Further, Paramount's claims fall within the scope of the arbitration agreement.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Cabir's Agreements with Paramount*

Paramount is an insurance broker and agent.  Shantelle Cabir worked for Paramount from October 2, 2012 through May 20, 2020, most recently as a commercial sales agent.  In May 2019, Cabir entered into three agreements with Paramount:  an independent contractor commission agreement, an arbitration agreement, and a confidential information and non-solicitation agreement.

Cabir signed the independent contractor commission agreement and arbitration agreement on May 6, 2019.  In the independent contractor agreement, Paramount agreed to pay commissions to Cabir at specified rates.  The agreement stated Cabir was an independent contractor and was not entitled to benefits Paramount provides to employees.

The form arbitration agreement stated:  "Any controversy, claim or dispute between [*sic*] arising out of or with respect to the Independent Contractor Commission Agreement or its breach, termination, enforceability, or validity, including the determination of the scope or applicability of this Agreement to arbitrate, or between the Parties or their work relationship shall be adjudicated by binding arbitration before a single, neutral arbitrator. . . . This Agreement shall be construed and controlled by the laws of the State of California."

Cabir signed the confidential information and non-solicitation agreement on May 16, 2019.  Cabir agreed not to disclose or use any of Paramount's confidential information, including customer lists and customer contact information, except as authorized by Paramount.  The agreement also provided that

3

Cabir may not solicit any of the past, current, or prospective clients of the company and may not contact any such persons for any purpose. Further, Cabir agreed that she would not encourage any other person employed by or contracted with Paramount to end their relationship with the company. Cabir also agreed not to make any disparaging remarks about the company.

On or about May 20, 2020, Cabir was terminated from Paramount. She went to work for Newfront Insurance Services, Inc. (Newfront), a competitor of Paramount.

B.      *The Pleadings*

On May 29, 2020, Paramount filed this action against Newfront and Cabir. A first amended complaint was filed on July 17, 2020. Cabir filed a demurrer, which was sustained in part with leave to amend and overruled in part. Paramount filed a second amended complaint on November 25, 2020, which Cabir answered on December 28, 2020.

Paramount alleged that, in violation of the confidential information and non-solicitation agreement and in violation of duties arising out of her work relationship, Cabir misappropriated Paramount's customer list and used Paramount's trade secrets and confidential information to contact and solicit Paramount's customers. Paramount asserted causes of action for misappropriation of trade secrets, breach of fiduciary duty, breach of written contract, and other related claims against Cabir and Newfront.

4

On August 17, 2020, Cabir filed a class action cross-complaint against Paramount and its chief executive officer Shawn Kohen. Cabir alleged that she was employed by Paramount as a commercial sales agent and sales manager, and that Paramount and Kohen deliberately misclassified her and other insurance agents as independent contractors instead of as employees. Cabir alleged violations of Business & Professions Code section 17200 et seq. and various provisions of the Labor Code on behalf of herself and members of the class. Cabir also alleged she complained to Paramount about the misclassification, and Paramount retaliated against her in violation of Labor Code section 1102.5 by terminating her. She asserted claims for retaliation and wrongful termination on her own behalf.

On December 15, 2020, Newfront filed a cross-complaint against Paramount, alleging, among other things, interference with business relations. A first amended cross-complaint was filed on July 30, 2021.

C.    *Paramount's Motion To Compel Arbitration of Cabir's Cross-complaint*

On October 14, 2020, Paramount and Kohen moved to compel arbitration of Cabir's cross-complaint and to dismiss the class claims. On December 23, 2020, Paramount and Kohen filed an amended motion to compel arbitration. Cabir opposed the motion, arguing the arbitration agreement was unconscionable and that Paramount had waived the right to arbitrate by filing this action.

On March 10, 2021, the court granted the motion to compel arbitration of Cabir's individual claims, implicitly denied the motion to dismiss Cabir's class claims, and stayed the litigation as to the class claims only. Among other things, the court ruled the arbitration agreement was not unconscionable and that Paramount had not waived the right to arbitrate by filing its complaint because the claims in Paramount's complaint did not fall within the scope of the arbitration agreement.

The court denied the request to stay the action as to Paramount's complaint pending completion of arbitration, but on April 2, 2021, the court granted a temporary stay while Cabir sought writ review. Cabir filed a writ petition on April 16, 2021, and we summarily denied it on April 21, 2021. The trial court lifted the stay on May 25, 2021.

The trial court's order granting Paramount's motion to compel arbitration of Cabir's cross-complaint is not at issue in this appeal.

D.      *Cabir's Motion To Compel Arbitration of Paramount's Complaint*

On June 15, 2021, Cabir filed a motion to compel arbitration of the claims in Paramount's second amended complaint. Cabir argued that the claims fell within the scope of the arbitration agreement and that she had not waived the right to arbitrate because she had moved promptly to arbitrate Paramount's claims after the court granted Paramount's motion. In support of her motion, she filed a declaration of Kristina Rodriguez, Paramount's chief sales and marketing officer, that Paramount had submitted in support of its motion to compel arbitration of Cabir's cross-complaint. In the declaration,

6

Ms. Rodriguez authenticated the arbitration agreement and stated that Cabir had agreed "to arbitrate on an individual basis all of her claims that arise from her work relationship with Cross-Defendants."

In opposition, Paramount argued that the trial court had already decided that Paramount's claims did not fall within the scope of the arbitration agreement when it granted Paramount's motion to compel arbitration of Cabir's cross-complaint. Paramount further argued that we had somehow "decided and determined" that Paramount's claims did not fall within the scope of the arbitration agreement when we summarily denied Cabir's writ petition. Paramount argued Cabir's motion to compel arbitration was an improper motion for rehearing under Code of Civil Procedure section 1008, subdivision (b), and California Rules of Court, rule 8.268. Paramount further argued that even if the motion was not procedurally improper, it had to be denied because (1) the arbitration agreement applied only to claims that arose out of the independent contractor commission agreement and thus did not apply to Paramount's claims, and (2) Cabir had waived the right to arbitrate.

In support of the opposition, Paramount filed a declaration of its counsel Jeffrey Farrow, in which he declared that Cabir had propounded 17 special interrogatories, 81 requests for production, form interrogatories, and 18 requests for admission. Farrow did not state that Paramount responded to that discovery (and the record reflects Paramount had not responded). Farrow also declared that on June 23, 2021 (which was after Cabir filed the motion to compel arbitration), Paramount had responded to discovery served by Newfront.

7

In reply, Cabir argued that the motion did not seek reconsideration of any order by the trial court or the Court of Appeal; that the claims fell within the scope of the arbitration agreement and that any other interpretation of the agreement would render it non-mutual; and that Cabir had not waived the right to arbitrate.

The court denied the motion, concluding that Cabir waived the right to arbitrate. The court stated:

> "In support of the motion, Cabir contends that there has been no waiver, since Paramount selected the initial venue, and Cabir was initially willing to litigate her claims in Paramount's chosen forum—this Court—until Paramount moved to compel arbitration of Cabir's cross-complaint. According to Cabir, the instant motion was filed without delay, because it was brought as soon as possible after the stay of the action was lifted. Cabir also argues that there is no prejudice to Paramount from Cabir's actions in the judicial forum, since Paramount has not responded to discovery propounded by Cabir.

> "While Cabir contends that the instant motion was brought promptly after the stay was lifted, the events before the stay are relevant to the issue of waiver. Cabir did not file a motion to compel Plaintiff's claims to arbitration until June 15, 2021, despite having been named in the original Complaint filed on May 29, 2020, and thereafter in the First Amended Complaint and the Second Amended Complaint. Cabir demurred to Plaintiff's First Amended Complaint and filed a Cross-Complaint on August 17, 2020,

8

without seeking a stay of the proceedings. Cabir filed an Answer to the Second Amended Complaint on December 28, 2020 without asserting arbitrability as an affirmative defense. Cabir's late invocation of arbitrability after multiple opportunities to raise it is a factor that points to waiver.

"Plaintiff has also demonstrated that Cabir has propounded discovery to Plaintiff. . . . Cabir contends that the discovery was only defensive in nature and that Plaintiff was granted an extension of the time to respond. However, Cabir' s propounding of discovery almost simultaneously with answering the Second Amended Complaint (in a pleading that does not raise arbitrability as an affirmative defense) is inconsistent with an intent to assert the right to arbitrate.

"Taken together, the Court finds that Cabir has waived the right to compel Plaintiff's claims to arbitration."

Cabir timely appealed from the order.

## DISCUSSION

A.    *Standard of Review*
    "There is no uniform standard of review for evaluating an order denying a [petition] to compel arbitration." (*Lopez v. Bartlett Care Center, LLC* (2019) 39 Cal.App.5th 311, 317 (*Lopez*), quotation marks omitted.) "[I]f the court's denial rests solely on a decision of law, then a de novo standard of review is employed."

9

(*Ibid.*, quotation marks omitted; accord, *Garcia v. KND Development 52, LLC* (2020) 58 Cal.App.5th 736, 744 (*Garcia*) ["[w]e review de novo the legal conclusions underlying a trial court's denial of a petition to compel arbitration"].)

"If the court's order is based on a decision of fact, then we adopt a substantial evidence standard." (*Lopez, supra,* 39 Cal.App.5th at p. 317, quotation marks omitted.) "Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] 'When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.'" (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).)

B.     *The Court's Order Granting Paramount's Motion To Compel Arbitration Is Not at Issue in This Appeal*

Cabir argues the trial court erred in granting Paramount's motion to compel arbitration of Cabir's cross-complaint. For example, Cabir argues the arbitration agreement is unconscionable and should not have been enforced against her. We will not consider these arguments. The order granting Paramount's motion to compel arbitration is not an appealable order and is not within the scope of this appeal.[1] (*Reyes v. Macy's, Inc.* (2011) 202 Cal.App.4th 1119, 1122.)

---

[1] Cabir does not even purport to appeal from the order granting Paramount's motion to compel arbitration of Cabir's cross-complaint. The notice of appeal specifically refers to the court's September 8, 2021 order denying Cabir's motion to compel arbitration.

10

In her opening brief, Cabir does not address whether we have jurisdiction to review the order granting Paramount's motion as part of this appeal. In her reply brief, Cabir argues the court has ancillary jurisdiction under Code of Civil Procedure section 1294.2 to review that order. We do not consider an argument raised for the first time in the reply brief. (See *Julian v. Hartford Underwriters Ins. Co.* (2005) 35 Cal.4th 747, 761, fn. 4.)

Even if we were to consider it, we would reject the argument. Code of Civil Procedure section 1294.2 provides in part: "Upon an appeal from any order or judgment under this title [governing arbitration], the court may review the decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the order or judgment appealed from, or which substantially affects the rights of a party." "'[T]he ancillary jurisdiction conferred by section 1294.2 simply ensures that the appellate court can effectuate its ruling on an arbitration order, by permitting review of any other trial court decision affecting that specific order.'" (*J.H. Boyd Enterprises, Inc. v. Boyd* (2019) 39 Cal.App.5th 802, 812.) Thus, for example, a court reviewing a trial court's order denying a motion to compel arbitration has ancillary jurisdiction to consider the portion of the order denying the request for a stay, even though an order denying a request for a stay is not generally appealable, because "'the appellate court's determination on the motion to compel arbitration would have been ineffectual'" if the denial of the request for a stay is not also reviewed. (*Id.* at p. 812.)

The order granting Paramount's motion to compel arbitration does not fall within this category. We do not need to review the order granting Paramount's motion to "effectuate [any] ruling" in this appeal. The court's order on Paramount's motion is not intermediate to the order denying Cabir's motion. (See *Laymon v. J. Rockcliff, Inc.* (2017) 12 Cal.App.5th 812, 825 [order granting arbitration is not appealable under § 1294.2 merely because it was rendered at the same time as an order denying arbitration]; *J.H. Boyd Enterprises, Inc. v. Boyd, supra,* 39 Cal.App.5th at p. 804 [in an appeal from an order denying a motion to compel arbitration, or in the alternative, motion for judicial reference, court declined to review the portion of the order denying the request for a judicial reference; denial of a request for a judicial reference was not an appealable order and was not within the scope of Code of Civil Procedure section 1294.2].)

C. *The Trial Court Erred in Denying Cabir's Motion To Compel Arbitration*

1. *The trial court's finding of waiver is not supported by substantial evidence*

"Code of Civil Procedure section 1281.2 provides that one ground for denying a petition to compel arbitration is that '[t]he right to compel arbitration has been waived by the petitioner.'" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 374 (*Iskanian*), overruled in part on other grounds by *Viking River Cruises, Inc. v. Moriana* (2022) 142 S.Ct. 1906.) The party opposing arbitration bears the burden of proving waiver. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

12

The standards for determining waiver of the right to arbitrate are not identical under California and federal law. (Compare *St. Agnes, supra,* 31 Cal.4th at p. 1203 [question of prejudice "is critical in waiver determinations"] with *Morgan v. Sundance* (2022) 142 S.Ct. 1708, 1713 [under federal law, courts may not "condition a waiver of the right to arbitrate on a showing of prejudice"].)[2]  We thus must determine whether California or federal law applies here.

The arbitration agreement provides:  "This Agreement shall be construed and controlled by the laws of the State of California."  Even when an arbitration agreement involves interstate commerce and thus falls within the scope of the Federal Arbitration Act, courts give effect to choice-of-law provisions in the arbitration agreement. (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 475-476.)  Where parties agree the arbitration agreement will be governed by California law, California law applies even when the agreement involves interstate commerce. (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 380.)  California law thus applies here.

Under California law, "[i]n the arbitration context, '[t]he term 'waiver' has . . . been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'" (*St. Agnes, supra,* 31 Cal.4th at p. 1195, fn. 4.)  "[A] party who

---

[2]     The issue of whether prejudice remains a critical factor in determining waiver under California law is currently pending before the California Supreme Court in *Quach v. California Commerce Club, Inc.* (2022) 78 Cal.App.5th 737, review granted August 24, 2022, S275121.

resists arbitration on the ground of waiver bears a heavy burden [citations], and any doubts regarding a waiver allegation should be resolved in favor of arbitration." (*Ibid.*; accord, *Cox v. Bonni* (2018) 30 Cal.App.5th 287, 303; *Gloster v. Sonic Automotive, Inc.* (2014) 226 Cal.App.4th 438, 447.)

The California Supreme Court has held the following non-exclusive factors are relevant to the waiver determination: "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party." (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quotation marks omitted, brackets in original; accord, *Iskanian, supra*, 59 Cal.4th at p. 375.) We refer to these factors as the *St. Agnes* factors.

We analyze each *St. Agnes* factor in turn, starting with whether Cabir's actions were inconsistent with the right to arbitrate. Here, Cabir's initial actions in this litigation, such as filing a demurrer and a cross-complaint, were not consistent with the right to arbitrate. But Cabir provides a reasonable explanation for her delay in seeking arbitration. (See *Iskanian, supra,* 59 Cal.4th at p. 376 [in analyzing whether the litigant's actions were consistent with the right to arbitrate, the court

14

considered "whether a delay was 'unreasonable'"]; see also *Quach v. California Commerce Club, Inc.* (2022) 78 Cal.App.5th 470, 479 (*Quach*), review granted August 24, 2022, S275121 [reasonableness of the delay considered in determining waiver]; *Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1100 ["[c]ourts will consider the existence or absence of a reasonable explanation for the party's delay in asserting its arbitration right in making a determination of waiver"].)

Cabir's primary objective was to litigate the claims in her cross-complaint in court, and she was willing to submit to the court's jurisdiction on Paramount's complaint to achieve her primary objective. Further, Cabir claimed the arbitration agreement was unconscionable. Moving to compel arbitration of Paramount's complaint in the first instance would have undermined this position. Thus, when the action was originally filed, it was not in Cabir's interest to move to compel arbitration, and she acted consistent with that interest.

But Cabir's interests substantially changed when Paramount's motion to compel arbitration of her cross-complaint was granted and her writ was denied. At that point, Cabir had a strong interest in the mutual, reciprocal application of the arbitration agreement to Paramount's claims against her. Cabir reasonably sought to litigate the entire action in a single forum that both parties apparently perceive as being more advantageous to the defendant or cross-defendant.

As the Supreme Court recognized in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 117-118, employees and other workers subject to mandatory arbitration agreements have a strong interest in having arbitration agreements applied mutually. "Given the

15

disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee." (*Id.* at p. 117.) It was reasonable for Cabir to seek to pursue her cross-complaint in court in the first instance, but after she lost that battle, for Cabir to seek to have the agreement applied mutually and reciprocally.

After Paramount's motion was granted, Cabir moved quickly to seek a reciprocal order. Cabir's actions were consistent with her right to seek the mutual application of the arbitration agreement after the court granted Paramount's motion. The first factor provides no support in favor of a finding of waiver.

The second factor considers whether "the litigation machinery has been substantially invoked" and whether the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate. (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quotation marks omitted.) Here, the parties were not well into the preparation of the case when Cabir filed her motion. While Cabir had propounded written discovery, Paramount had not answered it. Rather, the parties had agreed (and the court had ordered) that Paramount would not answer the discovery until 30 days after the trial court ruled on Cabir's motion to compel arbitration.[3] Further, the record does not

---

[3] In opposition to Cabir's motion to compel arbitration, Paramount's counsel declared that Paramount responded to defendant Newfront's discovery on June 23, 2021 (after Cabir's motion to compel arbitration had been filed), but counsel did not state that Paramount had responded to Cabir's discovery. In her reply memorandum in support of her motion to compel

16

reflect that any depositions had been taken. While Cabir had filed a demurrer and had answered Paramount's second amended complaint, those actions had occurred before Paramount filed its motion to compel arbitration. We cannot conclude the "litigation machinery ha[d] been substantially invoked" simply because of those filings.

The third factor considers "whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay." (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quotation marks omitted.) Here, Cabir's motion was not made close to the trial date; no trial date had been set when Cabir filed her motion. As to delay, as Paramount acknowledges, the relevant question is whether any delay was reasonable. (*Iskanian, supra,* 59 Cal.4th at p. 377.) Here, as discussed, Cabir acted reasonably in moving to compel arbitration of Paramount's claims after the court compelled arbitration of Cabir's cross-complaint, and not before.

The fourth factor considers "whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings." (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quotation marks omitted.) Although Cabir did file a cross-complaint, under the circumstances here, this factor provides little support for a

_____

arbitration, Cabir asserted that she agreed to extend the deadline for Paramount to respond to her written discovery to 30 days after the motion was decided. She further stated that Paramount's counsel consented. The May 25, 2021 order reflects that agreement. The notice of appeal from the order denying the motion to compel arbitration was filed less than 30 days after the court denied the motion, which stayed the action.

17

finding of waiver. As discussed, Cabir sought to have the cross-complaint litigated in court and was willing to submit to the court's jurisdiction on Paramount's complaint to ensure her action remained in court. It was only when she was compelled to arbitrate her cross-complaint that her interest in obtaining a reciprocal order arose. Cabir's filing of the cross-complaint does not evidence a waiver of the right to seek a mutual, reciprocal order.

The fifth factor considers "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place." (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quotation marks omitted, brackets in original.) The analysis of this factor is identical to the second, third and fourth factors. No important intervening steps occurred.

Finally (and most significantly), the sixth factor considers prejudice to the opposing party, specifically "whether the delay affected, misled, or prejudiced the opposing party." (*St. Agnes, supra,* 31 Cal.4th at p. 1196, quotation marks omitted.) Prejudice is a "critical" or "determinati[ve]" issue. (*Iskanian, supra,* 59 Cal.4th at pp. 376-377 [prejudice is "critical"]; *St. Agnes, supra*, 31 Cal.4th at p. 1203 [same]; *Quach, supra,* 78 Cal.App.5th at p. 479, review granted August 24, 2022, S275121 [prejudice is required to prove waiver]; *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205 (*Hoover*) ["[t]he presence or absence of prejudice from the litigation is a determinative issue"]; see also *Gamma Eta Chapter of Pi Kappa Alpha v. Helvey* (2020) 44 Cal.App.5th 1090, 1101 ["[a] party claiming the other party has waived its right to arbitrate must show prejudice"].)

18

"[C]ourts assess prejudice with the recognition that California's arbitration statutes reflect "'a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution'" and are intended "'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.'" [Citation.] Prejudice typically is found only where the petitioning party's conduct has *substantially undermined* this important public policy or *substantially impaired* the other side's ability to take advantage of the benefits and efficiencies of arbitration." (*St. Agnes, supra,* 31 Cal.4th at p. 1204, italics added.) "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses." (*Id.* at p. 1203; accord, *Iskanian, supra,* 59 Cal.4th at p. 377.)

Instead, "'[f]or example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration [citations]; where a party unduly delayed and waited until the eve of trial to seek arbitration [citation]; or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence [citation].'" (*Iskanian, supra,* 59 Cal.4th at p. 377; accord, *St. Agnes, supra,* 31 Cal.4th at p. 1204.)

Paramount has not identified any cognizable prejudice from the delay. Paramount argues it was prejudiced because Cabir filed a demurrer, filed her cross-complaint, propounded discovery, attended a case management conference, demanded a jury, and posted jury fees. Paramount asserts this conduct required

19

Paramount "to oppose the demurrer, file a motion to compel arbitration of Cabir's cross-complaint, attend the case management conference, and participate in litigation that early arbitration would have rendered unnecessary." But this does not constitute substantial evidence of prejudice.

As to the discovery, as noted, Paramount did not respond to the written discovery propounded by Cabir, and the record does not reflect that any depositions were taken. Accordingly, Paramount cannot show that Cabir obtained discovery of information that she would not have been able to obtain in arbitration or that Paramount was otherwise prejudiced from any discovery propounded by Cabir. (*Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1196 (*Groom*) [party opposing motion to compel arbitration did not suffer prejudice from discovery requests to which the party did not respond]; see also *Iskanian, supra,* 59 Cal.4th at p. 378 [discovery causes prejudice when "the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration"].)

As to responding to the demurrer and attending the case management conference, the Supreme Court has held that incurring costs for such pretrial proceedings does not amount to prejudice. (See *St. Agnes, supra,* 31 Cal.4th at p. 1203 [citing and relying on *Groom, supra,* 82 Cal.App.4th at p. 1197 for the proposition that "mere expense of responding to motions or other preliminary pleadings filed in court is not the type of prejudice that bars a later petition to compel arbitration"].) Paramount does not contend it suffered any prejudice from the demurrer other than the expense Paramount incurred in responding to it.

20

Paramount can hardly claim prejudice from having to file a motion to compel arbitration in response to Cabir's cross-complaint. Paramount initiated this litigation by filing its complaint in court. Cabir's preference was for the entire action, including her cross-complaint, to remain in court. Paramount benefited from its motion to compel arbitration; it was not prejudiced by it.

Paramount cites a series of cases for the proposition that delay by itself can create prejudice by substantially impairing the other side's ability to take advantage of the benefits and efficiencies of arbitration. The cases include, among others, *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443; *Burton v. Cruise* (2010) 190 Cal.App.4th 939; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553; and *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980. But those cases do not support Paramount's position. In each of those cases, "substantial expense and delay were caused by the *unreasonable* or *unjustified* conduct of the party seeking arbitration." (*Iskanian, supra,* 59 Cal.4th at p. 377.) Here, as explained, Cabir's conduct was reasonable and justified.[4]

---

[4] Other cases cited by Paramount also support the conclusion that the right to arbitrate is not waived when the delay is reasonable. (See, e.g., *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 30 ["a party must . . . demand arbitration within a reasonable time"]; *Spear v. California State Auto. Assn.* (1992) 2 Cal.4th 1035, 1043 ["When an arbitration agreement does not specify the time within which arbitration must be demanded, a reasonable time is allowed; a party who does not demand arbitration within a reasonable time is deemed to have waived the right to arbitration."]; *Spracher v.*

The trial court did not address prejudice in its order. Any implied finding of prejudice is not supported by substantial evidence.

The facts here are undisputed. The only reasonable inference we can draw from the undisputed facts is that Cabir did not waive her right to demand mutual arbitration. We thus conclude the trial court erred in finding waiver. (*St. Agnes, supra,* 31 Cal.4th at p. 1206 [where facts are undisputed and subject to only one reasonable inference, "the issue of waiver is one of law" and the reviewing court is not "bound by the trial court's ruling"].)

### 2. *Paramount's claims are within the scope of the arbitration agreement*

The trial court did not reach the issue of whether Paramount's claims are within the scope of the arbitration agreement in ruling on Cabir's motion to compel arbitration. Instead, by reaching the defense of waiver, the trial court implicitly assumed without deciding that the claims fell within the scope of the agreement.

The "[i]nterpretation of a contract is solely a question of law unless the interpretation turns upon the credibility of extrinsic evidence. [Citations.] Even where extrinsic evidence is admitted to interpret a contract, unless it is conflicting and requires a determination of credibility, the reviewing court is not

---

*Paul M. Zagaris, Inc.* (2019) 39 Cal.App.5th 1135, 1138 [unreasonable delay in seeking arbitration may constitute waiver]; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 445-446 [considering whether the delay in seeking arbitration was unreasonable].)

bound by the trial court's interpretation."  (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 799; see also *Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 439 ["[i]t is solely a judicial function to interpret a written contract unless the interpretation turns upon the credibility of extrinsic evidence, even when conflicting inferences may be drawn from uncontroverted evidence"]; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 866 ["[s]ince there is no conflict in the extrinsic evidence in the present case we must make an independent determination of the meaning of the contract"].)

Here, in the briefing before the trial court, neither side presented any extrinsic evidence concerning the interpretation of the arbitration agreement, other than the two other agreements that Cabir signed.  Because there is no disputed extrinsic evidence, the interpretation of the agreement presents a pure question of law.  We thus may consider the issue in the first instance. [5]

---

[5]    In the order *granting* Paramount's motion to compel arbitration of Cabir's cross-complaint, the court concluded Paramount had not waived the right to arbitrate in filing the lawsuit.  In reaching that conclusion, the trial court stated, "Paramount's Complaint, First Amended Complaint . . . and Second Amended Complaint . . . did not seek to litigate arbitrable causes of action.  Paramount's Complaint, [first amended complaint] and [second amended complaint] sought to recover for Cabir's alleged misappropriation of trade secrets [and] solicitation of Paramount employees, and to enforce the Confidential Information and Non-Solicitation Agreement executed by Shanelle Cabir on May 16, 2019, which does not contain an arbitration clause.  [¶]  On the other hand, Paramount now seeks to enforce the Binding Arbitration Agreement,

In her opening brief, Cabir argues Paramount's claims fall within the scope of the arbitration agreement. Paramount does not respond to this argument, other than to say that we need not reach the issue because the trial court correctly found waiver. "[R]espondent's failure to address an issue raised in the opening brief is not a concession," so we address the merits of Cabir's position. (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 557, fn. 48.)

To reiterate, the arbitration agreement states in part: "Any controversy, claim or dispute between [*sic*] arising out of or with respect to the Independent Contractor Commission Agreement or its breach, termination, enforceability, or validity, including the determination of the scope or applicability of this Agreement to arbitrate, or between the Parties or their work relationship shall be adjudicated by binding arbitration."

Although the language is not entirely clear, the best reading is that the arbitration agreement applies to three categories of claims: (1) controversies, claims, or disputes arising out of or with respect to the independent contractor commission agreement or its breach, termination, enforceability, or validity; (2) controversies, claims, or disputes between the parties (that is between Cabir and Paramount); and (3) controversies, claims, or disputes arising out of or with respect to the work relationship between Cabir and Paramount.

---

pertaining to the Independent Contractor Commission Agreement, executed by Shantelle Cabir on May 6, 2019." As discussed, the motion granting the motion to compel arbitration is not an appealable order, and we thus do not review the trial court's conclusions made in the context of that order.

24

The use of the word "or" before "between the Parties" and before "their work relationship" indicates that those are separate, disjunctive categories of controversies, claims, or disputes to which the arbitration agreement applies. (Cf. *In re E.A.* (2018) 24 Cal.App.5th 648, 661 [explaining the function of the word "or" in interpreting a statute].) "The word 'or' suggests alternatives." (*Ibid.*) "[T]he function of the word 'or' is to mark an alternative such as 'either this or that.'" (*Ibid.*, quotation marks omitted.)

Further, there is no reasonable way to interpret the phrases "or between the Parties" and "or their work relationship" as somehow modifying the phrase "arising out of or with respect to the Independent Contractor Commission Agreement." For example, the grammatical structure of the provision does not support the conclusion that those categories constitute a subset of claims arising out of the independent contractor commission agreement. Instead, the language strongly suggests that those are intended to be separate categories and that the agreement to arbitrate is not limited to claims, controversies or disputes arising from or with respect to the independent contractor commission agreement.

We recognize that the category of controversies, claims or disputes "between the Parties" is broad enough to encompass controversies, claims or disputes "arising out of or with respect to the Independent Contractor Commission Agreement" and controversies, claims, or disputes "arising out of with respect to [the parties'] work relationship." Thus, interpreting the agreement to cover all disputes "between the Parties" potentially renders the language describing the other two categories superfluous. However, the only way to avoid that issue would be to read the phrase "or between the Parties" out of the agreement

25

altogether.  On balance, we conclude the most reasonable interpretation is that the arbitration agreement covers disputes between the parties.  This is also consistent with the principles that ambiguities are to be interpreted against the drafter and that the arbitration agreements are to be interpreted to ensure they are bilateral. (*Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1472; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1214-1215 ["[p]articularly where the contract is one of adhesion, ambiguity in the contract language not dispelled by application of other canons of construction is interpreted against the drafter"].)

At the very least, the agreement covers disputes "arising out of or with respect to the work relationship between Cabir and Paramount."  In moving to compel arbitration of Cabir's cross-complaint, Paramount repeatedly took the position that the arbitration agreement applied to all claims that arose out of Cabir's "work relationship."  For example, Paramount argued that "[b]y executing the standalone 'Binding Arbitration Agreement,' [Cabir] affirmed that she understood and agreed to be bound to arbitration to resolve any and all claims arising out of her work relationship with Paramount."

The claims asserted in Paramount's second amended complaint are "claims, controversies or disputes" "between the [p]arties," and they thus fall within the scope of the arbitration agreement.  The claims also arise out of the parties' "work relationship."  Paramount's second amended complaint expressly alleges that Cabir breached duties that arose out of Cabir's work or business relationship with Paramount.  For example, in the first cause of action for misappropriation of trade secrets, Paramount alleges:  "Cabir, *as a condition of working for*

26

*Plaintiff,* acknowledged, understood and agreed that she would be entrusted with the confidential, proprietary and valuable information . . . , and further agreed that she would act in good faith toward Plaintiff and not disclose any such information during the term of her work with Plaintiff or thereafter." (Italics added.) In the second cause of action for breach of fiduciary duties, Paramount alleges: "While *in a business relationship* with Plaintiff, and *as a long-term independent contractor* with Plaintiff, Cabir had, at all times, a duty of good faith to Plaintiff, as well as a fiduciary duty to Plaintiff. [¶] While *in a business relationship* with Plaintiff, Cabir occupied positions of trust and authority sufficient to create a duty of good faith to Plaintiff, as well as fiduciary duties to Plaintiff." (Italics added.) The cause of action alleges breach of these duties.

Similarly, the fourth cause of action for breach of the confidential information and non-solicitation agreement alleges that Cabir breached the agreement by making improper use of information Cabir obtained through her work relationship. The first sentence of the confidential information and non-solicitation agreement states: "[Cabir] understands that, by virtue of . . . her *work relationship* with [Paramount], [Cabir] will acquire and/or be exposed to proprietary and confidential information of the Company." (Italics added.) This claim thus also arises out of Cabir's work relationship with Paramount.

In sum, the claims against Cabir in Paramount's second amended complaint fall within the scope of the arbitration agreement.

We note the confidential information and non-solicitation agreement states: "Notwithstanding any arbitration agreement between [Cabir] and [Paramount], in the event of a breach, or a

27

threatened breach, by [Cabir] of this Agreement, [Paramount] shall have the right to have the provisions of this Agreement specifically enforced by any Court having equity jurisdiction, and shall not be required to mediate or arbitrate, because breach or threatened breach will cause irreparable injury to [Paramount] and money damages will not provide an adequate remedy. . . . [Paramount] has the right to recover damages for all losses."  (We refer to this provision as the "exclusion provision.")  The agreement further contains a severability provision stating:  "If any provision of this Agreement shall be held to be illegal, invalid or unenforceable, the remaining provisions shall remain in full force and effect."

Paramount did not argue in the briefing in the trial court or in this appeal that its claims should not be ordered to arbitration because the exclusion provision applies.[6]  Any such argument has been forfeited.

---

[6]    As a result, the parties did not address, and the trial court did not have occasion to consider, whether the provision applied only to claims for injunctive relief or whether it would have to be severed to avoid rendering the arbitration agreement unconscionable.  (See, e.g., *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 248-249.)

## DISPOSITION

The order denying Cabir's motion to compel arbitration is reversed, and the case is remanded to the trial court with directions to vacate its order and enter a new order granting the motion. Cabir is to recover her costs on appeal.

ESCALANTE, J.*

We concur:

SEGAL, Acting P. J.

FEUER, J.

---

*     Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.