Filed 6/27/14  GreatNoprofits v. Exygy CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GREATNONPROFITS, INC.,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>EXYGY LLC,<br><br>      Defendant and Respondent. | A138352<br><br>(San Francisco County<br>Super. Ct. No. CGC-12-524114) |

Plaintiff GreatNonprofits (GNP) appeals a judgment entered after the trial court confirmed an arbitration award in favor of defendant Exygy LLC (Exygy) and sustained Exygy's demurrer without leave to amend.  GNP contends Exygy waived the right to arbitrate its claims against GNP by bringing a lawsuit against GNP's agent, Andrew McManus, that fell within the scope of GNP's arbitration agreement with Exygy.  We shall affirm the judgment.

## I.  BACKGROUND

### A.  Relationship Between GNP and Exygy

GNP is a nonprofit organization that provides reviews and ratings of other nonprofit organizations.  In this action, GNP alleged it hired Exygy in 2010 to provide custom software that would enable people to use GNP's website to read and provide reviews of nonprofits.  GNP alleged that Exygy's software was defective, and GNP's Web site experienced serious and frequent technical problems.  GNP asked McManus, its consultant and advisor, to supervise Exygy's work, and he began doing so in December 2011.

1

GNP and Exygy entered into a written contract in January 2012. The contract (or "Terms & Agreement") contained the following language: "Dispute Resolution: . . . If fourteen days pass from the time [a] dispute has arisen and it has not been settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation administered by the American Arbitration Association under its Commercial Mediation Procedures before resorting to arbitration. If mediation doesn't work, then, upon notice by either party to the other, all disputes, claims, questions, or differences shall be finally settled by binding arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction to do so." The Terms & Agreement also provided that, if GNP terminated the agreement, it would pay for all work that was scheduled to be performed within 75 days of the date it notified Exygy of its intent to terminate.

The agreement contemplated a series of "sprints" or phases in which Exygy would develop software for GNP, and the parties scheduled a series of two-week sprints beginning in January 2012. GNP alleged in its complaint that Exygy proposed the sprints in order to correct the problems with the software, that the problems with GNP's Web site persisted, and that GNP's chief executive officer told Exygy in late February 2012 that the upcoming March sprint would be the last and that she would not pay Exygy for the sprint scheduled in April 2012.

## B. Procedural History

On May 21, 2012, Exygy filed a complaint against McManus in the San Francisco Superior Court, alleging causes of action for intentional interference with contractual relations and negligent interference with prospective economic relations (the McManus action). On the same day, Exygy also filed with the American Arbitration Association a request for mediation of its dispute with GNP, which it characterized as one for breach of contract. The mediation was unsuccessful, and Exygy later sought arbitration of its dispute with GNP. This case turns on the effect of Exygy pursuing both arbitration against GNP and litigation against McManus.

2

*1. The McManus Action*

In the McManus action, Exygy alleged GNP had hired it to build an application programming interface, that it did so, and that in January 2012, Exygy and GNP entered into a work order agreement for "custom software development services" to be done in eight two-week phases or "sprints." Exygy performed, and GNP paid for, the first and second two-week sprints, which took place in January and March 2012. In January 2012, GNP "sent Defendant McManus to oversee the work by Exygy." McManus knew of the work order agreement. According to the complaint, he induced GNP to breach the work order agreement. The complaint alleged that McManus served as a member of GNP's Advisory Board, that he was a principal and founder of a competitor of Exygy and worked frequently with another competitor, and that he misrepresented Exygy's work performance and attempted to use his fiduciary relationship in self-dealing. In the cause of action for intentional interference with contractual relations, Exygy alleged McManus intended to disrupt the performance of the work order agreement, or knew that his conduct was substantially certain to cause a breach or disruption. In the cause of action for negligent interference with prospective business relations, Exygy alleged McManus knew or should have known the work order agreement would be disrupted if he failed to act with reasonable care, and that he failed to act with reasonable care and induced GNP to breach the work order agreement.

McManus (represented by GNP's counsel) demurred to the complaint. His demurrer to the first cause of action was based on the argument that he was an agent of GNP, and that a corporate agent cannot be liable for interfering with a contract to which the corporation is a party. His demurrer to the second cause of action was based on the argument that Exygy had not alleged McManus owed it a duty of care and had not alleged facts sufficient to show the conduct constituting the interference. McManus did not seek to have the dispute resolved by arbitration.

On August 15, 2012, the trial court overruled the demurrer as to the first cause of action and sustained it as to the second cause of action with leave to amend.

In the meantime, Exygy had served discovery requests on McManus, and it appears that McManus responded to that discovery on August 20, 2012. The following month, Exygy asked the court to dismiss the McManus action without prejudice.

2. *The Arbitration and the GNP Action*

GNP brought this action (the GNP action) against Exygy in the San Francisco Superior Court on September 11, 2012, alleging causes of action for breach of contract, breach of implied warranty of fitness for a particular purpose, negligence, unfair competition (Bus. & Prof. Code, § 17200 et seq.), and unjust enrichment. All of GNP's causes of action were based on its transactions with Exygy in connection with the custom software it had hired Exygy to provide.

On July 10, 2012, before the GNP action was filed, Exygy had filed a demand for arbitration of its dispute against GNP. GNP made a motion in the trial court to stay the arbitration on the ground that Exygy had waived its rights to arbitrate disputes arising from the software agreement by filing suit against McManus, whom GNP argued was its agent. The trial court denied the motion to stay arbitration on October 11, 2012, ruling: "Exygy did not waive arbitration by filing and prosecuting case number 520971 against Mr. McManus. In that action, Exygy did not allege any agency relationship between Mr. McManus and GreatNonprofits. Exygy asserted a claim for intentional interference with contractual relations against Mr. McManus. Mr. McManus is not a party to the Terms & Agreement or a party to the arbitration."

The arbitration proceeded. The arbitrator found Exygy had not committed a material breach of the contract, that under the terms of the contract, Exygy was entitled to 75 days' notice prior to termination, and that Exygy was therefore entitled to payment for the scheduled April sprint. The arbitrator awarded Exygy total damages and fees of $24,300.

Exygy then demurred to the complaint in the GNP action on the grounds that it failed to state a cause of action, that GNP's claims were barred by the doctrine of res judicata based on the arbitration, and that GNP's claims were barred by GNP's failure to raise them in a compulsory cross-complaint in the arbitration. In its opposition, GNP

4

argued the doctrine of res judicata did not apply because Exygy had waived its right to arbitrate by litigating its action against McManus in court. The trial court sustained Exygy's demurrer without leave to amend, ruling: "Defendant's prior suit against Mr. McManus did not address matters covered by the arbitration agreement because it only proceeded against Mr. McManus in his individual capacity and never resolved his agency status. . . . Additionally, Plaintiff has not shown it was prejudiced by the prior suit."

The trial court confirmed the arbitration award, denied GNP's motion to vacate the award, and entered judgment in favor of Exygy. This timely appeal ensued.

## II. DISCUSSION

GNP contends that by bringing its action against McManus and seeking discovery from him, Exygy waived its right to arbitrate its dispute with GNP. Accordingly, GNP argues, the trial court erred in sustaining Exygy's demurrer on the ground of res judicata and in confirming the arbitration award.

Both California and federal law reflect "a strong policy favoring arbitration agreements and require[] close judicial scrutiny of waiver claims," and the party asserting a waiver bears a heavy burden of proof. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*).) Factors a court properly considers in determining waiver include: " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' " (*Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 (*Sobremonte*); see also *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.) "There is no single determinative test of waiver, and the question for the trial court is one of fact. For us, the question is whether the trial

5

court's decision is supported by substantial evidence. If it is, we must affirm. If not, we may decide the issue as a matter of law." (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 557 (*Guess*); see also *Augusta v. Keehn & Associates* (2011) 193 Cal.App.4th 331, 337.)

A party's "mere participation in litigation and discovery, without prejudice to [the opposing party], would not necessarily compel a finding of waiver. [Citations.] '[T]he party who seeks to establish waiver must show that some prejudice has resulted from the other party's delay in seeking arbitration. [Citation.]' [Citation.] 'When determining whether the other party has been prejudiced, we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process.' [Citation.]" (*Sobremonte*, *supra*, 61 Cal.App.4th 980, 995; see also *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 211–212 (*Davis*).)

Our high court explained in *St. Agnes*: "Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. [Citations.] [¶] . . . Prejudice typically is found only where the petitioning party's conduct has substantially undermined [the] important public policy [in favor of arbitration] or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration. [¶] For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration (e.g., *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1366; *Guess*[, *supra*, 79 Cal.App.4th at p.] 558; *Davis* [], *supra*, 59 Cal.App.4th at p. 215); where a party unduly delayed and waited until the eve of trial to seek arbitration (e.g., *Sobremonte* [], *supra*, 61 Cal.App.4th at pp. 995-996); or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence (e.g., *Christensen v. Dewor Developments* [(1983) 33 Cal.3d 778,] 784)." (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1203–1204.)

The procedural posture of the case before us is unusual. Exygy's arbitration agreement was with GNP, not McManus. Exygy sought arbitration against GNP under

the agreement, and simultaneously brought a lawsuit against McManus for torts it alleged he committed to the detriment of Exygy's contractual relationship with GNP. Although McManus argued in his demurrer that as a corporate agent he could not be held liable for interfering with the corporation's contract, he neither sought to arbitrate his dispute with Exygy nor took the position that he was entitled to do so. Indeed, represented by the same counsel as McManus, GNP stated in its motion to stay the arbitration: "*Mr. McManus, not being a party to the Terms & Agreement himself, is not a party to the arbitration.*" (Italics added.) We are unaware of any cases holding that a party has waived arbitration by litigating a separate case against a nonsignatory who did not seek to arbitrate his dispute, and whom no one at the time asserted was entitled to do so.

GNP argues, however, that the arbitration agreement was broad enough to encompass Exygy's action against McManus, and that, as its agent, McManus was entitled to the benefit of the arbitration agreement. (See *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 409–410 [individual owners sued as agents of football team for breach of team's contract (which contained arbitration provision) entitled to arbitrate dispute]; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1004 [nonsignatories acting as agents of signatories entitled to benefit of arbitration].) Whether or not McManus would have been entitled to arbitrate his dispute with Exygy, however, the fact remains that he did not seek to do so—that is, he never sought the benefit of the arbitration agreement.

As we have explained, whether a party has waived the right to arbitrate is a question of fact for the trial court, which we must affirm if there is substantial evidence to support it. (*Guess*, *supra*, 79 Cal.App.4th at p. 557.) The facts of this case do not compel a finding of waiver as a matter of law. (See *ibid.*) There is no basis to conclude the McManus action delayed the arbitration. (See *Sobremonte*, *supra*, 61 Cal.App.4th at p. 992.) Moreover, while engaging in litigation may be inconsistent with the right to arbitrate (see *Sobremonte*, *supra*, 61 Cal.App.4th at p. 992; *Guess*, *supra*, 79 Cal.App.4th at p. 558), that rule has limited force here where, during the proceedings below, McManus never asserted his right to arbitrate his dispute with Exygy and even GNP

7

appeared to assume that McManus was not properly a party to the arbitration because he was not a party to the Terms & Conditions. Exygy's actions, therefore, do not show the kind of "gamesmanship" (see *Christensen v. Dewor Developments*, *supra*, 33 Cal.3d at p. 784) that is inconsistent with the right to arbitrate.

The trial court also found GNP had not shown it was prejudiced by the McManus action, and we review that finding for substantial evidence. (See *Sobremonte*, *supra*, 61 Cal.App.4th at p. 995 [to establish waiver, party must show prejudice from delay in seeking arbitration]; *Guess*, *supra*, 79 Cal.App.4th at p. 557.) We recognize that Exygy sought and obtained discovery from McManus, which GNP contends would not have been available in arbitration, and that courts have found the fact that a party learned the details of an opponent's case through pleadings or discovery before demanding arbitration to be a relevant factor in finding prejudice. (See, e.g., *Berman v. Health Net*, *supra*, 80 Cal.App.4th at pp. 1370–1371 [discovery]; *Guess*, *supra*, 79 Cal.App.4th at p. 558 [extensive discovery]; *Davis*, *supra*, 59 Cal.App.4th at pp. 212–215 [extensive discovery]; *Kaneko Ford Design v. Citipark, Inc.* (1988) 202 Cal.App.3d 1220, 1228–1229 [disclosure of defense strategy by means of answer to complaint].) GNP contends it was prejudiced because the discovery sought "information about the relationship between GNP and McManus; McManus' work at GNP; and GNP's operation and business information." In responding to those requests, GNP contends, it was "required to disclose at least part of its legal strategies to Exygy, which gave Exygy unfair advantage in the subsequent arbitration." The record, however, is devoid of any evidence or explanation supporting this unadorned contention. GNP has not provided either the answer or McManus's discovery responses, and does not explain how the information disclosed during discovery gave Exygy an "unfair advantage" in the arbitration proceedings. We therefore discern no error in the trial court's finding.

We also recognize that GNP may have incurred expenses, in an undisclosed amount, in responding to the discovery. However, the discovery was directed at McManus, not GNP. In any case, we cannot conclude the discovery was so extensive that, as a matter of law, GNP suffered prejudice due to the time and expense involved in

8

responding to it.  (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1203 ["courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses."].)

In sum, GNP has not persuaded us that this record required the trial court to find it had met its burden to show prejudice.

### III.    DISPOSITION

The judgment is affirmed.

_____
Rivera, J.

We concur:

_____
Reardon, Acting P.J.

_____
Humes, J.